On Motion to Dismiss.
MONROE, J.
The succession of Dr. Annibal Maguire was opened in the civil district court, on the petition of his widow, in July, 1899, and in June, 1901, judgment was rendered as follows:
“Considering the renunciation of this succession made by Mrs. Marie Maguire Pinsoneault, duly authorized by her husband, a copy whereof is filed herewith, and further considering the agreement entered into between the widow and heirs of the deceased, also filed herein, and that petitioners are hence entitled to the -decree prayed for, it is therefore ordered, adjudged, and decreed that Charles B. Maguire, Mrs. Kate L. Maguire, wife of William B. Fluker, and Joseph R. Maguire, he, and they are hereby, recognized as the sole and only heirs of their deceased *77 father, Dr. A. Maguire, and, as such, entitled to his entire estate, real and personal, and wherever situated, and particularly all of that property inventoried herein; and, as such heirs, they are sent into the possession of his said estate in the proportion of one undivided one-third thereof to each and all subject to the testamentary usufruct of their mother, Mrs. Mary T. Leake, widow of Dr. Maguire.”
Thereafter, in August, 1901, Joseph R. Maguire, who was afterwards joined by Charles B. Maguire, filed a petition alleging that he is an owner, in indivisión, of the property left by his father; that he and his coheirs have been put in possession thereof subject to the testamentary usufruct of their mother; and that he does not desire to hold said property in common; and praying for a partition. To this the mother excepts, and answers that, considering the character of much of the property, and of her rights as usufructuary, the plaintiffs are not entitled to a partition; and the sister and coheir joins in this defense, alleging, among other things, that the value of the securities constituting part of the property is fluctuating, and that it would work an injustice to partition the same, for the reason that the heirs will not be put in actual possession, and that the securities allotted to the one may hereafter appreciate in value, whilst those allotted to the other may depreciate, etc. There was, however, judgment in favor of the plaintiffs, “decreeing the partition in kind of the property and effects (excluding the lands situated in Iberia parish) belonging to the succession of the deceased, Dr. Maguire, and inventoried in his succession, subject to the life usufruct of the widow, and without disturbance of her possession; all rights of all parties being reserved, as to the lands or property outside of the parish of Orleans, for future action in the proper jurisdiction, also as to all issues that may arise by reason of the expiration of the stock of any corporation,” and further ordering and decreeing “that the parties to said partition be referred to W. Morgan Gurley, Esq., notary public, to effect the same,” etc.
From this judgment the defendants, the widow and usufructuary and the daughter of the decedent, upon July 5th, took a suspensive appeal, returnable to this court at the beginning of its present term, which appeal the plaintiffs and appellees now move to dismiss on the ground that it was prematurely taken.
Opinion.
It was held in Stokes v. Stokes, 6 Mart (N. S.) 350, that an appeal does not lie from a simple decree of partition between co-owners. In Woolfolk v. Woolfolk, however, 30 La. Ann. 146, it was said;!
“We think that the weight of authority, as well as reason, is against the dictum of Stokes v. Stokes. We consider that case overruled by Traverso v. Row, 10 La. 500; Id., 11 La. 494; McCollum v. Palmer, 1 Rob. 512; Blanchard v. Blanchard, 7 La. Ann. 529; and other cases subsequent. We are at a loss to understand why a judgment, rendered upon issues regularly formed by petition and answer, passing upon the titles of litigants, decreeing their respective portions in property, and fixing their indebtedness to each other, wants any of the essentials of a definitive decree. The rule or motion to homologate a partition, when made, is, in some sort, a new proceeding, requiring notice to the parties, and to be followed by another decree. We do not understand that, upon trial of such a rule, one can again bring into question the matters adjudicated in the original judgment of partition, but the contest is confined then to things done in the execution of it. It is doubtless true that, until this decree of homologation and confirmation is rendered, the partition cannot be regarded as, or have the effect of, a judicial partition; but that does not prevent the decree *79 of partition, in so far as it adjudicates upon the rights of the parties as between themselves from being final.”
(March 14, 1904.)
This language was quoted with approval in Cary v. Richardson, 35 La. Ann. 507. In Reynolds v. Reynolds, 43 La. Ann. 1118, 10 South. 303, it appeared that the co-ownership of the litigants had been admitted, and that the method and terms of the partition had been settled by consent, and it was held that an appeal did not lie from the judgment decreeing the partition. The court said, “The appellants have favored us with no defense of their position, and we see none,” and, cii-ig Stokes v. Stokes as an authority, dismissed the appeal. In the case at bar the judgment appealed from is not a simple decree of partition among co-owners, predicated upon admissions and consent, but is a judgment rendered in a proceeding to which a person having an imperfect usufruct of some of the property affected has been made a party, and in which she and one of the co-owners have set up the defense that property so situated cannot be made the subject of partition. As to the question thus presented, it has recently been said: “We are not aware that this court has ever held that the fact of the existence of the usufruct in the surviving partner in community would cut off an action of partition by the heirs of the other spouse, if the result of the partition would not be to extinguish the usufructuary’s rights. * * * IVe think that question should be left to be determined after evidence adduced on the facts of each particular case.” Succession of Glancey, 108 La. 421, 32 South. 356.
We may say now that we are not aware that it has ever been held that such usufruct would not cut off the action for partition, and that, in any event, we find no sufficient reason for holding that an appeal will not lie from a judgment finally deciding the question either the one way or the other. 'Che motion to dismiss is therefore denied.
Statement of the Case.
NICHOLLS, C. J.
Plaintiff represented that he was the owner of one undivided third of all property left by his deceased father, Dr. A. Maguire; that his brother, Charles B. Maguire, and his sister, Mrs. Kate L. Maguire, wife of William B. ETuker, both residents of New Orleans, were the remaining co-owners, each owning one-third, all of whom had been recognized as such co-owners and sent into possession of the said estate by judgment rendered in the succession proceedings of the said Dr. Maguire, No. 59,848 of the docket of the civil district court.
That the estate consisted of movable and immovable property, but principally of movable, and was easily susceptible of division in kind. That all of said property was subject to the testamentary usufruct of petitioner’s mother, Mrs. Mary T. Leake, widow of Dr. A. Maguire, and petitioner and his coheirs were placed in possession of said estate subject to said usufruct. That he did not desire to hold said property any longer in common with his co-proprietors, but desired them to be partitioned in kind, subject to-said testamentary usufruct.
In view of the premises, he prayed that his. said brother and sister and her husband and his mother be cited, and that there be judgment declaring that the property be partitioned, in kind or by licitation, among the co-owners, one-third to each, all subject to the testamentary usufruct of the mother; that an inventory, with appraisement, betaken of the property sought to be partitioned by notaries public in the parishes of Orleans and Iberia; that finally the parties be referred to a notary to effect a partition between the parties in due form and according-to law.
Under reservation of an exception of no-cause of action she had filed, Mrs. Maguire answered plaintiff’s petition, pleading- *81 first a general denial. She then denied the right of plaiiitiff to partition the estate, alleging that no such right existed in law, and that much of the property was. by its' nature such that her usufruct therein was imperfect, and that she had the right to use and dispose of the same as she might see fit, and that she could not by partition proceedings be deprived of her rights therein; that, in addition thereto, the heirs were not all in accord as to the making of the partition; and that the same would- work an injustice to them. She prayed for the dismissal of the suit.
On September 3, 1901, Mrs. Kate Maguire, wife of William B. Fluker, under reservation of an exception of no cause of action filed by her, answered. She first pleaded the general denial. She then admitted the allegations regarding co-ownership, but averred that there was no right in the plaintiff to partition the property of the estate, and averred that an inventory thereof was totally useless and unnecessary; that an inventory had already been taken of the succession property upon plaintiff’s petition, and the rights of the heirs had been fixed thereby; that she did not desire to partition the estate, for the reason that the' same would be illegal, as much of the property was by its nature such that the usufruct thereof was imperfect; that the value of the securities was fluctuating, and that it would work an injustice to the heirs to have the property partitioned, and they would not have the use and control thereof in order to change the investments, etc., and the result would be that the securities allotted to other heirs might decrease in value, thus giving an advantage and preference not contemplated by law.
Charles B. Maguire answered. He joined the plaintiff, asking that judgment be rendered as prayed for, decreeing a partition in kind of the property in the parish of Orleans. An inventory was made of the property of the succession generally, and of the property in Iberia parish.
The plaintiff discontinued his demand for the partition of the lands, and maintained that the civil district court was without jurisdiction to partition lands in Iberia parish. Experts' were appointed, who reported that the property was susceptible of a division in kind.
The district court rendered judgment decreeing a partition in kind of the property and effects (excluding the lands in Iberia parish) belonging to the succession of Dr. A. Maguire, and inventoried in his succession, subject to the life usufruct of the widow, and without disturbance of\her possession, all rights of all the parties being reserved, as to the lands or property outside of the parish of Orleans, for future action in the proper jurisdiction; also as to all issues that may arise by reason of the expiration of the stock of any corporation. It ordered that the parties to said partition be referred to Morgan Gurley to effect the same.
The district judge assigned the following reasons for his judgment:
“I am of the opinion that I have no jurisdiction to order the partition of the lands located in Iberia parish. The judgment of Division G in the succession of Dr. Maguire, based on the agreement of the widow and heirs, closed the succession. The plaintiff discontinued his demand for the partition of the lands, but defendants contend that, if a partition is decreed, they must be included. The heirs are the owners of these lands, subject to the widow’s usufruct, but, as the succession is closed, this court has no jurisdiction to partition them, because of their situs, among their co-naked owners.
“The other property sought to be partitioned consists of money, notes for money, secured by mortgage, and shares of the capital stock of certain corporations. By the will of the deceased, and by the agreement of the heirs, the widow holds the usufruct *83 of these things. Her usufruct of the money and mortgage notes is the quasi or imperfect usufruct, the effect of which is that the widow has the right to collect, expend, consume, or even to alienate, said things, subject only to the obligation to account to the heirs for their value at the end of the usufruct. She has the life usufruct.
“She is practically the owner, and there is no element of joint ownership or joint tenancy of these things among the heirs. They ¿re the joint obligees or joint creditors of the widow, their mother, for the value of these things, with their right of action for said things, or their value, against her, suspended until the usufruct shall end. As to the things themselves, subject to this quasi usufruct sought to be partitioned, there is no state of indivisión among the parties, for the usufructuary holds them, with the right to use and dispose of them.
“The usus fructus et ábusus are vested absolutely in her, as the result of the quasi usufruct which she enjoys of said money, and notes payable in money; and the effect is,to exclude the rights of the heirs, pending the usufruct, except to such extent as may be necessary to safeguard their eventual rights by any available conservatory remedy. See Rev. Oiv. Code, art. 536; Genty, l’Usu-fruit, l’Usage, et l’Habitation, Numbers 121, 164, 317.
“As to things subject, to the perfect usufruct, there can be a partition quoad the naked ownership among the heirs, subject to the life usufruct. Rev. Oiv. Code, art. 535; 15 Demolombe, p. 434; 2- Ohabot, 221; Duranton, 158, 85; 10 Laurent, pp. 261, 233.
“The claim, in the agreement on file, that the property may be partitioned ‘at the end of the usufruct, or sooner,’ is not, in my view, a' waiver by the widow Of her usufructuary rights.
“Such a waiver would have to be express. The terms relied on, ‘or sooner,’ must be read in connection with the actual text of the agreement.
“Thus construed, they are not a waiver, and have no effect.
“Defendants’ counsel informs me that some of the street railway stock will soon terminate, as the result of recent consolidation. Any issue that may arise on this subject during the partition, if there be any objection from any of the parties, can be referred by the notary for judgment.
“ft is apparent that the property is easily divisible in kind, and that the interest of the heirs, the naked owners, 'can be fixed and determined. Besides this, the report of the experts shows this to be true.”
Mrs. Mary Maguire, the widow, and Mrs. Kate L. Maguire, wife of W. L. Eluker, appealed.
Dr. A. Maguire died in July, 1896, leaving a widow and four children — two sons and two daughters. He left a will, in which he left to his wife the testamentary usufruct of his estate. He left a special legacy to Mrs. Pinsoneault, a married daughter living in Ganada. The latter accepted the legacy and renounced her father’s succession, so that, for the purposes of this action, she is eliminated from consideration.
The legal title to all the property left by the deceased was in the community of acquets and gains which existed between him and' his wife, Mrs. M. T. Maguire, but the community owed his separate estate a much larger amount than the value of this property. ' Inventories of his estate were _ made.
A good many controversies arose between the parties in interest, which resulted in the execution by the widow and heirs of an (act sous seing privé, which was declared therein to be ah agreement made between them in order to compromise and settle the controversies regarding the will‘of Dr. Annibal Maguire, and such other matters as were specifically mentioned therein, and with full *85 reservation of all other rights. All parties consented that the title of the property should be shifted, without further formality, to the separate estate of the father, and be dealt with from that standpoint. The fifth and sixth articles of this agreement were as follows:
“(5) The three remaining heirs of the said Dr. A. Maguire, to wit, Charles B. Maguire, Mrs. I-Cate Maguire Eluker, and Joseph R. Maguire, shall be recognized by decree of the court in the above entitled and numbered proceedings as the sole heirs of all the property of the succession of the said Dr. A. Maguire, both real and personal, wherever situated, and the said heirs shall by judgment of said court in said proceedings be put into possession of the property of the said succession, subject, however, to the testamentary usufruct of their said mother, Mrs. Mary Maguire, as established by the will of their said father, which said usufruct is hereby agreed to and allowed by the said heirs; and the said heirs, in consideration of this compromise, settlement, and adjustment, do hereby mutually and severally waive, renounce, and abandon any right to call on each other to collate to the succession of their said late father all amounts advanced by him.
“(6) That all the property hereinabove described in the fourth paragraph belonged to the said Dr. A. Maguire at the time of his death, and to his succession after his death, and that the aggregate of said property, as then or subsequently invested, composes the succession of the said Dr. A. Maguire, which the heirs agree shall be equally divided between them at the death of their said mother ’ or sooner, subject to her usufruct.”
On the 12th of June, 1901, the civil district court rendered judgment ordering, adjudging, and decreeing (considering the renunciation of the succession made by Mrs. Marie Maguire Pinsoneault, and considering the agreement entered into between the heirs) that Charles B. Maguire, Mrs. Kate L. Maguire, wife of William B. Eluker, and Joseph R. Maguire, be recognized as the sole and only heirs of their deceased father, Dr. A. Maguire, and, as such, entitled to his entire estate, real and personal, wherever situated, and particularly all of that property inventoried in the suit in which the judgment was rendered, and as such heirs, and sending them into the possession of said estate in the proportion of one undivided one-third thereof to each and all, subject to the testamentary usufruct of their mother, Mrs. Mary T. Leake, widow of Dr. A. Maguire.
On application and prayer, to that effect made to the civil district court by Joseph R. Maguire and Charles B. Maguire, their mother, Mrs. Mary T. Maguire, was ordered to execute a bond, as usufructuary in favor of each.
Simultaneously they brought the present action for a partition between themselves and their sister, making their mother, as usufructuary, a party.
At the time this suit was brought the situation of the property and the heirs was this: Mrs. Maguire had been put in possession, as usufructuary, of a certain amount of money in cash. She also held in usufruct a number of notes secured by mortgage on property in Canada; a number of shares of the,New Orleans City Railway Stock, purchased with proceeds of the premium bonds; a number of shares in the Montreal Railway Company, certificate in Canada; and also a number of shares of the New Orleans Gaslight Company.
In the inventories made on the 22d of December, 1899, by W. H. Wright, notary, of the property of the succession, there were inventoried five bonds of the city of New Orleans, known as 4 per cent, constitutional bohds, inventoried at $5,475. These bonds were sold by Mrs. Maguire for $5,500. The proceeds of the same were turned over to her son Charles B. Maguire, together with $625 — the two amounts aggregating $6,125— *87 for the purpose of purchasing a house on Chestnut street, in New Orleans.
He bought the property, taking the title in his own name.
In the inventory on tire 5th of September, 1901, by Morgan Gurley, notary, Mrs. Maguire referred to the sale of those constitutional bonds, and declared that the money resulting therefrom had been invested in the purchase of the property on Chestnut street, and that Charles B. Maguire had taken the title to the same in his own name without her knowledge or consent.
On the 28th of December, 1900, Mrs. Maguire instituted an action in the civil district court for the parish of Orleans against her son Charles B. Maguire, in which she alleged that he had purchased on the 28th of April, 1900, from the succession of A. Searer, for the sum of $6,125, the property referred to as 2717. Chestnut street. That the money with which the property was bought belonged to her, and was placed by her in his hands to make the purchase under an agreement with him. That the understanding and agreement were that the property should belong to her until her death, and at her death it should belong to him, but should be charged to him in the settlement of her succession, and that under said agreement she had always been in possession of the property.
That on June 11, 1900, her son executed to her a counter letter as follows:
“This is to certify that while the property No. 2717 Chestnut st. is bought and registered in the name of Charles B. Maguire it is practically sijeaking to belong to the said Mrs. Mary Maguire until her death at which time all claim to the said' property is to revert to the undersigned. Charles B. Maguire.”
That, notwithstanding she had repeatedly called on him to execute a more specific counter letter, evidencing the agreement between them, he refused to do so, and that it was necessary, to protect her and prevent •him from alienating or incumbering said property, that she should have a decree of court decreeing that the property belonged to her until her death, at which time it should become her son’s; he to be charged in the settlement of her succession with the sum of $6,125 expended in acquiring the property.
That he refused to execute the counter letter in such shape as would protect her and fully express the agreement between them, and therefore exposed her to the loss of over $6,000, should her son alienate and incumber the property. She prayed for judgment decreeing that the property was purchased with her money, and under an agreement between her son, in whose name the title was taken, and herself, to the effect that it, and the profits, rents, and income thereof, should belong to her, without charge, until her death, when it was to become absolutely his, to be chargeable with the sum of $6,125 expended in acquiring the property, as an advance to him on his succession rights, and that he be decreed to have no right to alienate or mortgage the property to the prejudice of her life interest therein.
Defendant answered by a general denial. Further answering, he averred that during the lifetime of his father he frequently declared that he would like respondent to have a home, and, on his deathbed, stated it was his desire that certain 4 per cent, bonds of the city of New Orleans owned by him should be sold, and the proceeds utilized in purchasing a home for respondent and his mother, in order to equalize, in a measure, favors shown during his life to the other children. That, upon the death of his father, his mother requested him to purchase a home,- the price thereof to be paid by her as executrix of Dr. Maguire, same to be deducted from respondent’s share in said estate — with the understanding, however, that she should have the use and occupancy of said home, in conjunction with him, during her life, to which he agreed — whereupon he purchased a home on *89 Fourth street, but the title thereto was defective. That subsequently he purchased the property No. 2717 Chestnut street for the price of $6,125, and notified his mother’s attorney, who disposed of the 4 per cent, bonds for the sum of $5,500, and applied the proceeds pro tanto to the purchase price; his mother, as executrix, advancing the balance ■cash; it being understood that the entire price, $6,125, should be deducted from respondent’s share in his father’s estate. After the purchase, respondent and his mother moved into the house, and occupied the same jointly, as agreed upon.
That his mother well knew that the title of the property stood in his name, and that it was so intended, as the amount paid for the bouse, to wit, $G,125, was to be deducted from respondent’s share in the succession of his deceased father. That it was always understood that said property was the property of respondent, to be deducted from the share coming to him in his father’s estate.
Respondent prayed that he be decreed to be the owner of the premises No. 2717 Chestnut street subject to the right of his mother to occupy the premises jointly with him during her life.
The district court rendered judgment in the case on the 11th of July, 1901, recognizing and decreeing Mrs. Mary Maguire, widow of Dr. A. Maguire, to have the usufruct for her life, without the obligation of giving security, but subject to the obligations imposed by law of paying taxes and insurance, and keeping in repair the property. The court further decreed and declared the respondent to be the owner of the property, subject to the full usufruct thereof, for the life of Mrs. Maguire, which usufruct she should have the right to give up and surrender at any time on giving her son five days’ written notice that she abandoned the same and gave him possession of the house.
The evidence shows that C. B. Maguire received additionally from his mother $1,500, of which $1,000 was a manual gift to himself, and $500 with which to pay various claims against the succession. He did this to the amount of $470, leaving in his hands $30, for which he has yet to account to her. The other son, Joseph R. Maguire, received $2,500 from his mother after the death of his father. Two thousand dollars of this amount was received by him as an advance on his interest in his father’s succession, as ohe then contemplated going into business. Changing his mind on that subject, he returned $1,520 to his mother, leaving in his hands a balance of $480.
On the inventories of the succession taken in Iberia parish were several lots of ground, with the buildings and improvements thereon. Joseph R. Maguire had been in possession of this property for some time before his father’s death, and has continued to occupy it ever since, under the belief that it belonged to him as a donation from his father. After his father’s death he received from his mother $500 with which to complete and improve the building on one of the lots. He seems to have done this, and to have addi■tionally expended for the same purpose the $480 which he had retained out of the $2,000 advanced to him by his mother.
The property in Iberia is admitted to belong, not to Joseph R. Maguire, as he thought, but to ,the succession of Dr. Maguire.
The defendants insist that the partition filed is for the partition of an entire estate which is held together by the usufruct of Mrs. Maguire; that under no circumstances can the naked owners demand a partition of particular assets of that estate; that their eventual rights will be to such part of the estate as may in the end be due to them on settlement of all accounts. They insist that Charles B. Maguire and Joseph Maguire had been both given money, and Joseph R. Maguire was in possession of real estate of which he refused to give possession to his mother, who had demanded it; that, in this *91 situation, it -would be impossible for any partition or provisional partition to be made of particular assets; that that was what Charles B. and Joseph R. Maguire were trying to do. They were trying to keep everything they had been advanced, and exclude the Iberia ' real estate, and partition the remainder. That the partition could not be effected without compelling the other heir to take his interest in particular property, while the others would have received a correspondingly large amount in money. That the stock, bonds, and notes might eventually fall great- - ly in value, and Mrs. Fluker would then sustain a loss, by being forced to take in satisfaction of her rights property at its present valuation which was subject to fluctuation. That two heirs who had received a larger part of their inheritance in money, fixed in value, were not in a legal position to demand a provisional partition of specific part of the estate subject to the usufruct.
They maintain that where there is a usufruct, even under the French law, which differs somewhat from our own, the only partition that can be .made is the partition of the joint and aggregate of all the owners over the entire estate. The heirs owned in indivisión the right to take the entire estate when the usufructuary died. If they wished a partition, they must dispose of their right in the entire succession. They cannot dispose of the right of reversion to particular assets. If they wished a partition in kind, they should partition the entire partition in kind, not partition certain assets, and leave others unpartitioned. That the result would be inexplicable confusion in settling their mutual claims. They refer to Laurent, vol. 6, No. 36S, as saying, “La nue propriété seule est indivise ello peut done seule étre partagée ou licité s’il y a lieu,” and contend that the disposal of the joint naked ownership as an entirety was unnecessary and would work hardship. They quote from the opinion of this court in .Roehereau v. Maignan, 32 La. Ann. 45, where an effort was made to procure the sale qf a judgment owned in common, in which, in rejecting the demand, the court said, “As the parties’ counsel, we have diligently searched for a precedent which might assist us in deciding this peculiar controversy, and to decide if we have to follow the imperishable landmarks which lead to justice and right.”
Counsel say the demand for that partition was refused on the ground that it could benefit no one, and might injure some of the co-owners, and that princiifle should lead to the rejection of the present demand.
In arguing the case for the defendants, counsel say:
“The French law so largely relied on by plaintiffs differs textually from our own. The Code Napoleon contains no article expressly defining perfect and imperfect usufruct, as do articles 534, 535, and 536 of our Louisiana Code. The conclusions of the French commentaries as to what constitutes perfect and imperfect usufruct are based upon the verbal construction of articles 582 and 587, Code Napoleon. Article 583 lays down the general rule that the usufructuary can enjoy the property subjected to the usufruct. The French commentators rigidly hold to the view that the general rule must obtain in all cases, except where the Code itself expressly establishes some exception, and the only exception established by that Code is found in article 587, which declares the usufructuary is owner of those things which he cannot use without consuming ‘dont on ne peut faire usage sans les consommer, comme l’argent, les liqueurs, les grains.’ Article 534 of the Civil Code of Louisiana declares that imperfect usufruct exists over those things which would be useless to the usufructuary if he did not consume or expend them, or change the substance of them, as money, grain, liquors.
“Article 549 of the Louisiana Code is partly translated from article 587, Code Napo *93 león, and a comparison of the two articles brings into clear relief the wider range of the rule in our Code. Article 587, O. N., says: ‘Si l’usufruct comprend des choses dont on ne peut faire usage sans les consommer, eomme 1’argent, les grains, les liqueurs, I’usufrv'dier a le droit s’en servir, mais a la charge d’en rendre de pareille quantité, qualitS et valeur ou leur estimation a la fin de 1’usufruit.’
“Article 549 of the Louisiana Code says: ‘If the usufruct includes things which cannot be used without being expended or consumed or without their substance being changed, the usufructuary has the right to dispose of them at his pleasure, but under the obligation of returning the same quantity, quality and value to the owner or their estimated value at the expiration of the usufruct.’
“The French law brings under the head of imperfect usufruct only those things which must be consumed when they are used. The Louisiana .law brings under that head not only things that are consumed, but also those that are expended, or where substance is changed in use. There can be no doubt the Legislature intended to widen the class of things subject to imperfect usufruct by the terms ‘expended’ and ‘substance changed,’ used both in article 534 and in article 549. It is, then, fallacious to az-gue that because certain things do not, in France, belong to things of which there can be imperfect usufruct, therefore the same things are incapable of imperfect usufruct in this state. Let us then put aside the French authorities, and see whether short-term mortgage notes are or are not subject to imperfect usufruct in Louisiana?
“The Supreme Court has held that the usufruct of a given number of bales of cotton is imperfect, and conveys the title thereto to the usufructuary. Sucen. of Hayes, 33 La. Ann. 1144. So the usufruct of a stock of groceries is imperfect. Sucen. of Blaneard, -18 La. Ann. 580, 19 South. 683. The reason for holding the usufruct to be imperfect in the above cases is that the things conveyed by it must be convei-ted into money, and the proceeds reinvested, in order to derive the use and advantage which is ordinarily deiived from them. It is not expected that the usufructuary will have the baled cotton spun into thread, and the thread woven into cloth, and the cloth into garments, etc., and the garments, sheets, etc., worn or used until they wear out. The usufructary might use the bales of cotton in that way, but that is not the ordinary way of using such things. It is customary to sell the cotton and make use of the money re-^ c.eived therefor.
“So a stock of groceries, or the merchandise found in a grocery store. In such a stock are many articles that are-neither eaten nor drunk, but are used in household operations. The ownership of the entire stock passes to the usufructuary, who may sell them as owner.
“The same line of reasoning necessarily includes short-time mortgage notes and other securities payable in money. The customary way of using such property is to collect the money when due, and then to reinvest or use the money. There is no intention that the several notes shall continue the same in any z-espect. There is the knowledge in advance that every note will in a brief period be converted into money, which will come back to the usufructuary for use or investment. The ordinary use of pi’operty in the form of notes is that the substance of the several investments, the debtors, and the forms of the security are constantly undergoing change, and the property itself, represented by the notes, is continually being collected and expended in the purchase of new notes. Such property is therefore the very type of that which is brought under the operation of imperfect usufruct by the wider provisions of our law (articles 534 and *95 549), as compared with the restricted scope of the French law (article 587). Even in the French law, notwithstanding the restrictions of article 587, there is a strong tendency to hold the usufructuary the owner of credits (notes, etc.). It is admitted that he has the right to collect the principal when due, and 'that the principal, when so collected, becomes the property of the usufructuary, under the imperfect usufruct to -which money is subject. Baudy-Lacantinerie, vol. 1, No. 1564, after stating that the usufructuary may collect credits (notes, etc.) when due, adds:
“ TI est vrai que le droit de rusufruitier va ainsi se trouver transformer, l’usufruit va dégenérer en quasi usufruit, mais eette transformation est indépendante du fait de Rusufruitier — elle rSsulte de la nature meme du droit de créance qui 5tait temporaire.’
“Notes given for money loaned in mortgage and payable at short terms are not regarded as permanent investments, but simply as a form of the money itself. The necessities of business require that the usufructuary shall have all the powers of the owner of such paper. From time to time such mortgage notes are collected and reinvested in different amount by loans to different borrowers. The security is continually shifting. The aggregate mass of the notes will be nearly constant, but the several units composing it will vary from month to month. It is impossible to deny to the usufructuary of such a mass the right of the imperfect usufructuary. It would be impossible to administer an aggregate of this kind if the usufructuary did not have the right to collect or reinvest from time to time, or to sell if that course was more advisable.
“It is admitted that the usufruct of money is imperfect, and therefore no partition can be had of the cash which passed into the hands of the usufructuary. That sum could not be used to equalize the shares, as it might be in a final partition.
“The mortgage notes, stocks, bonds, etc., stand on the same footing as money, in this respect. They are no more than money the subject of perfect usufruct. The only way in which a partition could be made in this case, as matters stand, would be to compel Mrs. Fluker to take a large amount of securities of a- fluctuating value, in which her mother has a usufruct for life, to offset an amount of money which her brothers have already received.
“The plaintiffs have discontinued for a partition of the real estate in Iberia parish. That property is excluded by the voluntary act of the plaintiffs, whether the court had jurisdiction or not.
“The certificate of stock for the Montreal Railway is in the name of Dr. Maguire, and is physically in Canada. Any judgment of partition rendered here respecting this stock would be of no avail in Canada.
“Our law (articles 534 and 549) is more consistent and simple than the French law. It treats the usufructuary as owner of the credit ab initio, and not a tempore solutionis. Our law placing the usufruct of short-time mortgage notes on the same footing as money, the usufructuary is the owner of the same, and hence this cannot be partitioned and be used in a provisional partition in the hands of the usufructuary to equalize the shares.”
Plaintiff’s counsel, on the other hand, insist that “no one can be compelled to hold property unless the contrary has been agreed upon, and any one has the right to demand the division of a thing held in common by action of partition. Civ. Code, art 1289. No one can be compelled to remain without partition, and distribution may be always sued for, notwithstanding prohibitions and conventions. C. Nap. 815/ Possession of the thing by the owners is not necessary for the purposes of partition. Civ. Code, art. 1320; Denton v. Woods, 19 La. Ann. 356. Usufruct is divisible. Civ. Code, art. 539. The owner of the naked property *97 may sell or Incumber the estate which is subject to usufruct. Civ. Code, art. 605; Berthelot v. Fitch, 44 La. Ann. 503, 10 South. 867.
“A partition can be had even if property is burdened with the usufruct of the surviving spouse. Meyer v. Schurbruck, 37 La. Ann. 373; Succn. of Glancey, 108 La. 414, 32 South. 356.
“All property subject to perfect usufruct can be partitioned. Gentry on Usufruct, § 154 et seq.; 15 Demolombe, 434; 2 Ohabot, 221-231; 7 Duranton, 156; 6 Aubry & Rau, 512; 10 Laurent, 261. Movables as well as immovables are subject to a perfect usufruct. Gentry on Usufruct, §§ 50-54. Debts due to tne owner are subject to perfect usufruct. Gentry on Usufruct, §§ 50, 54, 121, 128.”
In the brief for plaintiffs, their counsel urge that “the Code declares that the owner may sell or mortgage the property subject to the usufruct. A partition in kind is but a transfer of the interest of the co-owners to one of the co-owners. It is but a sale of such interest to a co-owner, and this the law permits. If a co-owner can sell to a perfect stranger his interest in the property, subject to the usufruct, or may mortgage it, and thus have such interest sold for him at judicial sale, how much greater reason is there that co-owners may partition the property among themselves! The result obtained in either instance is the same — a transfer of the interest of the co-owner to another. The French writers are in perfect accord on this subject. Gentry on Usufruct, Use & Habitation, at section 193, declares that naked owners cannot be compelled to hold property in common because of the usufruct thereon. Each bare owner has the right to partition, for he seeks to partition the property itself, not the right of the i>ossession, which is in the usufructuary, who is in no way affected by the division.
“Demolombe, in his fifteenth volume, p. 434, § 488, says: ‘This rule that no one can be constrained to remain in indivisión is applicable’ in all eases — ‘always,’ says the text. ‘The circumstance that the property to be partitioned is affected in whole or in part with a usufruct in favor of any person whatever, even of the widow of the deceased, or any other, would not be obstacle to the demand for a partition. Journal du Plais 1877, pp. 608, 660.’
112 La. — 4 •
“Chabot, vol. 2, p. 231, § 5, says: ‘It follows again from the disposition of article 815 that a partition could be asked even during the time that would last the enjoyment of all or part of the property undivided which might have been granted, either by the deceased or by the heirs, or to one of them, or to the widow of the deceased, or any other person. In this case each heir may still have an interest in having determined by a partition those properties of which he may be finally the owner, because he is free thenceforward to mortgage — even to dispose of them burdened with the usufruct in favor of a third party.’
“Aubry & Rau, p. 512, state that, ‘if the universality of the property is burdened with a usufruct, the existence of the usufruct will not prevent the heirs from provoking between themselves a partition, as concerns the naked property. But they cannot compel the usufructuary to participate in the partition, and to consent to a sale of the immovables acknowledged indivisible, reserving his rights to the proceeds.’
“It may be further argued that the usufruct created is imperfect, and hence no partition will lie, because imperfect usufruct means ownership. The only property subject to the usufruct which can be claimed to be imperfect in its nature is the money left by the deceased. This money the heirs own. The usufructuary has the usufruct thereof. She can consume it, but she owes what she consumes to the heirs, which makes more apparent the necessity for a bond. If she then owes the money, these heirs have a claim against her for the amount, and the *99 partition of the money would only mean that the claim against the usufructuary would be divided among them according to the partition. This would be the result of the partition, for each heir would only have the third of the amount — one-third of the claim due by the usufructuary to the heirs. We can easily see that a partition by licitation of property subject to a usufruct could not be accomplished, but when it is a partition in kind, where only the claim of each heir as against the usufructuary, instead of all of them against her, is ascertained, we can see no reason why such a partition cannot be made. But can the usufructuary object to such a partition? In an agreement made the basis of the judgment, and signed by her, it is stipulated that this property, including this money, ‘shall be partitioned at the death of the usufructuary among those heirs or sooner subject to her usufruct.’
“This agreement entered into by her cuts her off from now objecting to such a partition.
“It is res adjudicata (Civ. Code, art. 3178) by reason of the compromise adjustment, and she has no cause to complain, nor can such a partition in any manner injure or incommode her.
“Addressing ourselves now to the remaining defendant, Mrs. Fluker, we find that she has pleaded that the property sought to be partitioned is subject to an imperfect usufruct, and that such partition would hence be illegal; that the value of the securities belonging to the co-owners is fluctuating; and that hence the co-owners must hold in indivisión, and share whatever profits or losses may ensue from the investments. The reason assigned why a partition should be decreed is, we maintain, one of the best reasons that can be urged why it should be allowed. These co-owners have an absolute right to have the particular property of each segregated from the property of the other. It may be that one of them may eventually lose by the operation, and the other may gain, but still these are the chances each must take for himself when he is accorded the full ownership of any property. The law gives each a right to full ownership, and in demanding full ownership each heir is only establishing his independence — a condition which the law advocates. 2 Ohabot, 231.
“Plaintiff insists that the’ partition suit was properly brought in the parish of Orleans, as the succession was no longer open, but closed [citing Anderson v. Stille, 12 La. Ann. 669; Succession of Baily v. Becnel, 30 La. Ann. 1035; Gay & Co. v. Pike, Id. 1337; and Crawford v. Binion, 46 La. Ann. 1261, 15 South. 693], and that the real estate in Iberia was legally-withdrawn from the partition; the district court for the parish of Orleans having no jurisdiction over it.”
Opinion.
The first question which ’meets us in this case is whether the action, as it stands, can be maintained. The plaintiff originally included among the objects sought to be partitioned the real estate in Iberia parish, which at the death of Dr. A. Maguire constituted part of the property of his succession. Charles B. Maguire, though joining in the demand for a partition, restricted his consent to property in the parish of Orleans. Thereupon the plaintiff voluntarily discontinued his demand for the partition of that property. The exclusion of that property from partition in the ease does not, therefore, rest upon the court’s ruling that it did not fall under his jurisdiction. This ruling was based upon the ground that the succession of Dr. A. Maguire being, as such, closed by the sending of his heirs into possession, partition of that particular property had to be dealt with by the court of the parish in which it was situated.
We think the court’s conclusion on that point was erroneous. Under the circumstan *101 ces of this case, it had jurisdiction to entertain a demand for the partition of that property.
It is true that the heirs of Dr. Maguire were sent into possession of his estate hy order of court, and that that fact carried with it important legal consequences, but among them was not the changing of the tenure by which the heirs held the property. When Dr. Maguire died, his heirs became seised of an undivided interést in his succession, viewed as an entirety. They had no separate, joint, undivided interest in each of the specific objects which went to make up the sum total of the succession when they were sent into possession. Their rights in this respect remained just what they were before. The undivided interest of each heir in the -whole was not broken up into a separate, undivided, joint interest in each of the objects belonging to the succession. The interests of the heirs in the succession property as a whole could be severed, so as to make it become distinct in some specific object, only by unanimous consent of the heirs. The heirs, after being sent into possession, still held the property subject to partition as a whole.
That the “title” or “tenure” by which heirs hold the common property remains unaffected is apparent from article 164 of the Code of Practice, which declares that, in all matters relative to successions, the defendants must be cited before the court of the place where the succession has been opened, in suits brought by one heir against another, until after partition by the heirs, inclusively, and there has been as yet no partition among the heirs of Dr. Maguire. The district court being called upon to settle the entire rights of the heirs, and the Iberia property being part of the whole, it had necessarily to be considered by the court for the purposes of this partition. Civ. Code, art. 1327. The necessities of the situation forced it into consideration by the civil district court. The same reasons which justified this court in declaring that one or more joint owners of real estate, residing outside of the parish where that property was situated, could be brought into that court in order to settle in one action the joint interests of the parties concerned, operate to bring into the court entertaining jurisdiction over the subject-matter of the general partition all the property which would have necessarily to be considered to effect that result, independently of the parish in which it might' be situated. Code Prac. art. 164, par. 4.
We are of the opinion that the defendants had the right to object to partial partition of the succession property, and that the suit, as it was presented to the district court, should have been dismissed. We do not undertake to say what the rights of the parties would have been, had all the property of the succession been sought to be partitioned herein. We may say incidentally that the decision in the matter of the Succession of Glancey was rendered upon an exception of “no cause of action,” and there was nothing to show whether the widow had a right of usufruct or not. The same may be said of Meyer v. Schurbruck, 37 La. Ann. 373.
Por the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court herein appealed from be, and the same is hereby, annulled, avoided, and reversed, and plaintiff’s suit is hereby dismissed as of nonsuit, with costs.
MONROE, .1. I concur in the decree.