This is a suit for partition. The question presented is one of law.
Where two or more heirs have inherited in indivision two or more pieces of real estate and, though they have never been sent into possession by a judgment of court, they have irrevocably and unequivocally indicated their intention to accept the succession and, for seventeen years, have actually used the property, do they continue to hold it as co-heirs so that no one of them may demand a partition of one of the pieces of real estate without requiring a partition of all of the succession property, or are they to be considered as ordinary co-owners of each separate piece so that any one may demand a partition *Page 252 
of any of the pieces of real estate without requiring a partition of the whole of the inherited property?
It is not necessary that we set forth in detail all of the ramifications in which the titles of the various properties are involved. It is sufficient that we state that the property of which partition is sought and at least one other piece of real estate were included in the inheritance by his children of the estate of their father, Jacques Numa Montz, who, in 1922, died in the Parish of St. John the Baptist. He left at least these two separate pieces of real estate and ten children, who, in indivision and in equal shares, inherited his estate. His succession was never judicially opened and the ten children, without any legal proceedings, began to use the property and, at various times, treated it as theirs by making mineral leases thereof, by leasing portions of it for agricultural purposes, and by doing other things by which they evidenced an unequivocal and irrevocable intention to accept the succession of their said father. Two of the heirs have since died. The successions of these have not been judicially opened, but, prior to the death of one of these two, her interest in her father's estate had been purchased by the present plaintiff, who has also purchased the interests of all of the remaining brothers and sisters except those who are made defendants in this suit for partition.
Seventeen years after the death of the father, Jacques Numa Montz, one of the sons, Armand Montz, who, as we have said, has acquired the interests of all of his brothers and sisters except the one who has died and two remaining sisters, brings this partition suit and seeks to partition by licitation one part of the real estate left by the said Jacques Numa Montz, that part being described as follows: "A certain piece or portion of ground, exclusive of all buildings and improvements thereon, but with all the rights, ways, privileges, servitudes, advantages and prescriptions thereunto belonging or in anywise appertaining, situated at LaPlace, Parish of St. John the Baptist, State of Louisiana, commencing at a point 225' from the right of way of the Yazoo Mississippi Valley Railroad, measuring toward the rear, or away from the Mississippi River, having a front of 85' by a depth of 330' between equal and parallel lines, bounded in front by land belonging to William Beason, on the lower line by the property of Armond Montz, on the upper line by property of Jean Baptiste Ferran and the rear by property of Progress Benevolent Association."
The defendants, the two sisters of plaintiff, resist the demand for partition, contending, by exception of no cause of action, which was overruled, and then, also, in an answer, that since the succession of their father has never been judicially opened and since they and their co-heirs have never, by judgment of court, been sent into possession of the estate of their father, no partition of a portion of the said estate may be demanded by one of the heirs if any of the others object and that, where there is such objection, if any one of them desires to partition any of the property, he must partition the entire estate. As an alternative defense, defendants contend that the property is susceptible of division in kind and that, therefore, there cannot be a partition by licitation except by consent.
From a judgment ordering the partition by licitation, defendants have appealed.
We shall consider, first, the legal question raised by defendants: That, since they have not been sent into possession, no one of the heirs may demand a partition of any one portion of the inherited property without partitioning the entire estate.
In Maguire v. Fluker et al., 112 La. 76, 36 So. 231, in syllabi written by the court, appears the following:
"Heirs have the legal right to insist upon the partition in entirety of the property inherited by them. They cannot be forced to a partition of specific properties in successive actions.
"In such suit all properties, wherever situated, must be brought in for partition."
In Caraway v. Hebert, 182 So. 164, 166, the Court of Appeal for the First Circuit, citing as authority the case of Maguire v. Fluker, said: "Where the succession has not been closed, and a partition of the succession property is sought by one or more of the heirs, all of the succession property must be brought into the partition proceedings, as the succession property, however separate in nature and different in location, is considered as a unit, and the court having jurisdiction of the succession has jurisdiction of the partition proceeding."
Counsel for plaintiff maintain that the Maguire case is not controlling and — to quote from their brief — that it "has been overruled numerous times by our courts", *Page 253 
and they add that it "was bad law when it was decided". We have been unable to discover that it has been overruled insofar as it holds that, so long as inherited property remains in the succession of the deceased and so long as the heirs have not been judicially sent into possession, they remain co-heirs. It is true that that case went even further and held that "the heirs, after being sent into possession, still held the property subject to partition as a whole". We point to the words "after being sent into possession" since it must be conceded that that portion of the holding is no longer controlling, having been obviously overruled in the following cases: Medicis et al. v. Medicis,155 La. 171, 99 So. 27; Prichard et al. v. McCranie et al.,160 La. 605, 107 So. 461; Mitcham et al. v. Mitcham et al., 186 La. 641,173 So. 132. But, in none of those cases did the Supreme Court depart from the principle that, so long as the heirs are not sent into possession, they remain co-heirs of the entire estate. In the Medicis case, supra, the Supreme Court said [155 La. 171, 99 So. 28]:
"At the time of the institution of the partition suit the property had ceased to be owned by the succession of Martin A. Medicis. The judgment recognizing the heirs and sending them into possession had been rendered, and two of the said heirs had sold their rights and interests to a third person. The suit for partition therefore did not involve the division of succession property, as contended for by counsel for plaintiffs in rule. It was an ordinary suit between co-owners, * * *".
In the Prichard case, supra, in very similar language, appears the following [160 La. 605, 107 So. 464]:
"The present suit for the partition of the same property, into the possession of which these heirs were sent by judgment of the Sixth district court of date October 1, 1921, was filed in said court June 5, 1922. It is clear, therefore, that the succession of Mrs. C.A. McCranie ceased when the heirs were recognized and sent into possession, that the property thenceforth became their common property as owners, and that the present suit is not one involving the division of succession property, but is an ordinary partition suit between co-owners. Medicis et al. v. Medicis, 155 La. 171, 99 So. 27; Johnson v. Labatt, 25 La.Ann. 143; Sevier et al. v. Sargent et al., 25 La.Ann. [220], 221; Freret v. Heirs of Freret, 31 La.Ann. 506; Gillespie et al. v. Twitchell et al., 34 La.Ann. 288; Succession of Andrew and Marie Durnford et al. v. Geo. Urquhart et al., 24 La.Ann. 114."
And in the Mitcham case, supra, the same principle was followed, the court saying [186 La. 641, 173 So. 135]:
"It is elementary that, where the judgment in a succession recognized heirs and sent them into possession of the property, the succession ceased, and the property became common property of heirs as owners, and subsequently suit for partition did not involve the division of succession property, but was an ordinary suit between co-owners."
The important principle which is controlling here and which is emphasized in all of the above-cited cases has not been overruled, and that is that, so long as the heirs are not sent into possession, they remain co-heirs, with the result that, unless all consent, there can be no partition unless it be of the entire estate.
In Caraway v. Hebert, supra, it was contended, as it is here stated, that the case of Maguire v. Fluker had been overruled, but our brothers of the Second Circuit found — just as we have found here — that the principle which is involved in the case at bar and which was decided in the Maguire case had not been overruled. In the Caraway case appears the following: "Learned counsel for plaintiff contend that the Maguire-Fluker case, supra, is no longer the law, being in conflict with subsequent decisions of the Supreme Court. But the only conflict that we find in that case with more recent cases is on the point wherein the court held in that case that the action of partition was one involving property belonging to a succession, even though the heirs had been sent into possession by a judgment of court. It does appear that that part of the decision is in conflict with many other decisions of the Supreme Court, some of which we have cited above, which hold that after the heirs are sent into possession by a judgment of court they hold the property of the succession as ordinary co-owners."
And the rule that, so long as inherited property remains a part of the inherited estate and so long as the heirs are not sent into possession thereof, it must be treated as a whole and no one can require a partitioning of any part of it without partitioning the whole, is a very fair rule based on several sound reasons. In the *Page 254 
first place, where several heirs inherit several pieces of property, it almost always occurs that one or more of them is in better financial condition than are the others and, if such a one could demand a partitioning of a particular piece of property in which he might be especially interested, he would be able to outbid his co-heirs at the partition sale of that particular piece of property because the others, not having available the cash necessary to bid on that particular piece of property, would be at a great disadvantage, but, if all of the property should be sold in the same partition sale, then each of the heirs would know that he might use his interest in all in making his bid on any particular piece of property in which he might be interested and he could, thus, afford to bid a much larger amount than he could bid if he did not have back of him the protection afforded by his interest in the other properties. This reason has been recognized in many cases.
The second reason is that, as is well known, the law does not favor partition by licitation, requiring that, unless there be consent, it be made in kind if division in kind is not impossible. It may well be that, where two or more properties are involved, the entire estate may be divided into a sufficient number of portions to permit of a partition in kind, whereas any one of the pieces of property, because of its peculiar location, or shape, might not be susceptible of division in kind. For this reason also, then, where an estate consists of more than one piece of property, it is only proper that no one should be permitted to insist on a partition of one piece of property unless all other portions be also included.
A third reason is that our law contemplates that, in the partitioning of the whole estate, all matters of collation shall be settled among the various co-heirs. Obviously, if only one portion of the estate is to be partitioned, matters of collation cannot be arranged in that partition, and, therefore, so long as the property remains technically a part of the estate of the ancestor and has not, by judicial decree, passed into the possession of the heirs as co-owners, the right to demand collation still exists in the heir and may be insisted upon when the whole estate is partitioned. This right to collation does not exist where the partition is of property of co-owners, as distinguished from co-heirs. In Mitcham v. Mitcham, supra, appears the following: "It is also well settled that rules relating to collations and succession partitions are expressly excepted from application to ordinary partitions which involve only property held in common, and that, under articles 1242 and 1290 of the Revised Civil Code, collation cannot be exacted in partitions among co-owners. Prichard v. McCranie, 160 La. 605, 613, 614, 107 So. 461; Duffourc v. Duffourc et al., 154 La. 174, 97 So. 391."
Nor does the fact that since the death of the ancestor some of the heirs have transferred or sold their respective interests to others in any way affect the well-established rule. We quite agree with what was said in the Caraway case: "The change in the proportions of ownership in the entire tract or any part of it by these transfers did not affect her original rights in the thing as a whole which was held in common."
If such a change could affect the result, then one heir might sell a part of his interest to a third person, or two or more heirs might, by agreement, transfer their interests, and, by this device, force a partial partition, which the original owners could not have accomplished.
And that such transfers at the common law cannot be availed of to create the right to partition each piece of inherited property separately seems to be well established, for, as pointed out in the Caraway case, both Ruling Case Law and Corpus Juris state the rule substantially as it is stated in that case.
In the nature of an alternative contention, plaintiff maintains that, even though, ordinarily, there can be no forced partitioning of a part of an inherited estate without the partitioning of the whole, this rule should not apply where, as here, the heirs have treated the inherited properties as theirs and have done acts which have irrevocably and unequivocally evidenced their intention to accept the succession which has fallen to them, and counsel direct our attention to these various acts, which, they say, have evidenced acceptance.
It is quite clear that these acts have evidenced tacit acceptance by the heirs, for what they have done has many times been recognized by our courts as indicating the intention to accept, and the acts which they have performed have often been relied upon as depriving the heirs who have so *Page 255 
acted of the right to renounce. In Civil Code Article 988 it is provided that the acceptance by the heirs may be tacit as well as express and that "It is tacit, when some act is done by the heir, which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir." And in article 994 of the Code it is stated that "* * * to act as owner is to make himself heir". In an article in which the author discusses the various acts which may be relied upon as evidencing tacit acceptance, there appears the following: "The most common acts which are said to imply an heir's tacit acceptance of a succession are acts of dominion or ownership. This is readily understandable when the fact is considered that such an act constitutes the plainest possible method by which the heir may tacitly express his intent to act as master of the succession property, a status he could assume only by accepting the succession." 11 Tulane Law Review 617.
But the fact that an heir may have done some act which may prevent his renouncing the succession does not do away with the necessity that, as between himself and his co-heirs, there be judicial recognition of his tacit acceptance and judicial settlement of the various correlative rights and obligations among the heirs and between the heirs and the estate. It often occurs that, where heirs inherit jointly and in indivision, they, for a time, permit the properties to be kept intact and to be managed for the joint benefit of all. Surely such an arrangement should not be permitted to form the basis of a contention by one that thereby the others have evidenced the intention to terminate the joint heirship, to do away with the respective rights to demand collation, or to demand settlement of the various obligations which may exist between the various heirs and the estate, or among the various heirs, and to substitute therefor a status of ordinary joint ownership to which there attach none of the obligations and rights among the heirs, or between the heirs and the estate they have inherited.
Counsel say that there are certain suits which an heir may file before he is judicially sent into possession and they argue from this that, since an heir may file such suits, it is obvious that, without being put into possession, he may, as heir, file any suit which any owner may file, and that this should include the right to file a partition suit to divide any piece of property of which he may be a joint heir.
But the suits which an heir may file before he is sent into possession are those which are necessary to conserve the property, or to preserve it from loss, such as tax redemption suits (Bonvillain et al. v. Richaud, 153 La. 431, 96 So. 21), or petitory actions. Long et al. v. Chailan et al., 187 La. 507,175 So. 42. Such suits may be necessary to preserve the property as a part of the estate. In other words, these suits protect or conserve the property involved and they protect and conserve it for the estate so that it may be and remain a part of the estate when there arrives the time at which the heirs may demand that they be sent into possession.
In Bonvillain et al. v. Richaud, supra, it was held that an heir who had not been judicially sent into possession of inherited property might, nevertheless, maintain an action to redeem a part of the property of the decedent which had been sold at tax sale. There it was contended that such an heir had no cause of action to bring such a tax redemption suit unless he should allege that he had been sent into possession and had paid the state inheritance tax. This argument was based on the provision in the inheritance tax statute, Act 109 of 1906, as amended by Act 199 of 1920, which prevented an heir from taking possession of any part of an inherited estate without first obtaining the authority of court and without first paying the inheritance tax, or having it declared that no such tax was due. The court said that, in bringing such a suit, the heir was not taking possession of the property or disposing of it, but was merely taking such steps as "might well `seem necessary to preserve the property from loss'." [153 La. 431, 96 So. 22.]
But the fact that an heir, before he is sent into possession, may file such a suit, in no way justifies the view that he may file any suit which an owner may file after being judicially sent into possession.
As an additional reason which should prevent plaintiff from partitioning the property in question, defendants rely upon the fact that there has been no judgment fixing the inheritance tax due by the various heirs, or declaring that no such tax is due. In other words, they make a contention very similar to that made by the defendant in the Bonvillain case and, in support of this argument, they rely upon the provisions of section 3 of Act 127 of 1921, *Page 256 
Ex. Sess., the inheritance tax statute presently in force, and which is, to all intents and purposes, identical with the statute referred to in the Bonvillain case and which reads as follows: "It shall be unlawful for any heir, legatee or other beneficiary of a donation mortis causa to take or be in possession of any part of the things or property composing the inheritance legacy or other donation mortis causa, or to dispose of the same or any part thereof, until he shall have obtained the authority of the court to that effect, except as hereafter provided in section 17 [Sec. 8572]; and in case he shall so take or be in possession or shall so dispose of such things or property, or any part thereof, he shall no longer have the right of renouncing such inheritance or donation mortis causa, and shall remain personally liable for the tax thereon; but he may, without waiting for authority do such acts as may seem necessary to preserve the property from waste, damage or loss." Dart's Louisiana General Statutes, Sec. 8558.
Plaintiff counters with the argument that this same contention was made in the Bonvillain case and that there the Supreme Court rejected it. It is true that the Supreme Court did say that, in spite of those provisions in the inheritance tax law, an heir, before being sent into possession, might file a suit to redeem property of the inherited estate. But, as we have shown, the court so held only because the inheritance tax statute especially permitted an heir, even before having the inheritance tax fixed, to "do such acts as may seem necessary to preserve the [inherited] property from waste, damage or loss". The court held that, to file such a suit "to enforce the right of redemption of a title lost by a tax sale, or, in the alternative, to have the sale declared null, might well `seem necessary to preserve the property from loss,' * * *". We cannot read the opinion in that case without reaching the conclusion that it was only because the filing of a suit to redeem was especially authorized by the inheritance tax statute that the Supreme Court held that an heir might file such a suit without first being sent into possession. It cannot be said that a suit to partition is in any way necessary to preserve the property from loss.
For this reason, also, plaintiff's suit to partition must be dismissed.
Since we feel that, as a matter of law, the objection to the partitioning of the one piece of property is well founded, it is not necessary that we consider the question of fact which is presented in the alternative contention of defendants that the inherited property is not susceptible of being partitioned in kind.
The judgment appealed from is annulled, avoided and reversed, and it is now ordered that plaintiff's suit be and it is dismissed at his cost.
Reversed.