WILLIAM DICKSON LEA, Administrator, *v.* JOHN FREDERICK
MYERS and others.

The rule, *Quæ temporalia sunt ad agendum, sunt perpetua ad excipiendum*, applies
only where a defendant is in the exercise of the right, or in possession of the pro-
perty or position, attempted to be taken from him.   It cannot protect a party who
has remained silent, and suffered a purchaser to keep possession during the period
required to prescribe an action of rescision.

Silence for seventeen years, after the age of majority, will be considered a tacit ratifi-
cation of the acts of a minor.   The longest period of prescription for such acts is
ten years.   C. C. 2218.

APPEAL from the District Court of Livingston, *Jones,* J.
*J. L. Sheaf* and *A. Hennen,* for the plaintiff.
*Waterston,* for the appellants.

SIMON, J.   The plaintiff, as administrator of the estate of Da-
vid Kemp deceased, sets up title to a tract of land containing
twelve hundred and eighty acres, situated in the parish of Liv-
ingston, on the Notalbany river, opposite the town of Springfield.

He alleges that the tract formerly belonged to John Frederick Myers deceased, and was inventoried as his property in 1814. That David Kemp derived his title thereto, by legal and just conveyances, from all the heirs of John Frederick Myers, and for a valuable consideration. That David Kemp, the deceased, possessed the said tract as owner from and after the 20th of May, 1817, to the time of his death in 1820. That said possession was openly continued by the heirs of David Kemp, and especially by one of them, up to the year 1840; whereby the said David Kemp and his heirs, under him, have acquired a just and legal title thereto by prescription.

He further represents that Frederick Myers, B. Childress and Thomas Green Davidson, and others, clandestinely took possession of the said tract during the year 1840, in bad faith, for the purpose of compelling the heirs of Kemp to become plaintiffs against them; and that they are now in possession of the said land, trespassing on the same, to the injury of the succession represented by the petitioner, to the amount of two thousand dollars.* Wherefore, he prays that the said Myers, Childress, and Davidson may be compelled to show under what title they claim the said tract of land, and by what authority they claim possession thereof; that they may be condemned to pay, in solido, the damages suffered, to the amount of four thousand dollars; that the tract of land in controversy may be declared to belong to the succession of David Kemp, and that his heirs may be adjudged to be the only legal owners thereof; &c.

Childress and Davidson joined issue, first, by denying the allegations contained in the plaintiff's petition, and alleging that the pretended rights of the petitioner originated in fraud, and are absolutely null and void. They further aver that they are the sole owners and possessors of the land in dispute, having acquired their title thereto by an unbroken chain from the legitimate forced heirs of John F. Myers deceased, who died possessed of the same; and that, in virtue of the said chain of title, they are now in the actual corporeal possession of the land, and have been so,

---

* He also claims $2000 further, for damage for the slander of the title of Kemp.

uninterruptedly, for upwards of five years.   They pray to be quieted in their title and possession.

John F. Myers also filed an answer, in which he states that he has no interest in this suit or the land in controversy, having, on the 4th of December, 1837, sold his portion to Jacob J. Watts and B. Childress, for a valuable consideration.

Jacob J. Watts also appeared as one of the defendants, and disclaimed all title and interest in the land in dispute, averring that the title and interest which he once had, now belong to B. Childress, his former co-proprietor.

Under these pleadings, the respective titles of the parties were investigated; and judgment having been rendered below in favor of the plaintiff, in his capacity of administrator, the defendants, Childress and Davidson, took the present appeal.

The evidence shows that, on the 23d of May, 1817, Thomas Kennedy, acting as the agent and attorney in fact of Catharine Myers, the widow of John F. Myers deceased, and George Myers, one of the legitimate heirs of said deceased, executed a deed of sale, transfer and assignment to David Kemp, of *all the right, title, interest, claim and demand of what kind, nature, or quality soever, as well real as personal,* which they had in and to the estate of John F. Myers deceased, *by right of marriage, inheritance, or in any other manner whatsoever,* &c., for and in consideration of the sum of two thousand and one hundred dollars, cash in hand paid.   This deed was passed before the Parish Judge of the parish of St. Helena wherein the parties resided, and is accompanied by a power of attorney from Catharine Myers to Kennedy, in which he is authorized and empowered to act for her and in her name, and to contract for her in any way he thinks most advantageous, in collecting and recovering her dower due her by the estate of her late husband, obligating herself to comply with any contract or sale he might make in transferring her claim, &c.

On the 31st of May, 1817, Frederick Myers, who was then a minor, above the age of eighteen years, and who is stated in the act to have been duly emancipated and authorized by the Parish Judge, with the advice of a family meeting, sold and transferred *all his hereditary rights and claims* to David Kemp, for and in

consideration of the sum of seven hundred dollars. This act was passed before the same Parish Judge, and is subscribed by Frederick Myers, and Thomas Kennedy as his curator *ad hoc.*

It appears that on the 4th of December, 1837, John F. Myers conveyed to B. Childress and Watts *all his rights as heir* to his father, John F. Myers, and his mother, Catharine Myers. That on the 28th of July, 1838, Charles Myers also conveyed to Watts, Childress, and one Facundus, *all his rights and claims to the estate of his father*, John F. Myers. This act was passed before Burlin Childress, (one of the vendees,) as Parish Judge of the parish of Livingston, and is only accepted by Facundus and Childress.

Several documents are also found in the record, showing certain proceedings had in the year 1814, in relation to the estate of John F. Myers deceased, and the inventory thereof, in which the land in controversy is included; also other proceedings had before the Court of Probates in 1835, and in 1840, and the sale made by the coroner, under an order of said court, of the tract of land in controversy, as belonging to the successions of John F. Myers and Catharine Myers, to Burlin Childress, dated the 1st of September, 1840; the will of John F. Myers, and the probate thereof, in which will, he acknowledges George Myers, Frederick Myers, and Charles Myers as his legitimate heirs, and appoints his second wife, Ann Eliza, executrix of said will; and the deed of sale from the sheriff to the defendant Davidson, to establish his title to one-half of the land in dispute, seized and sold on his co-defendant, Childress, who remained the owner of the other half.

The parol evidence establishes, that John F. Myers deceased repeatedly acknowledged Catharine Myers as his wife, and George Myers and Frederick Myers as his legitimate children. Catharine survived several years after his death, and in his will he declares himself the legitimate father of said George and Frederick, *his two children by his former wife.* It appears, also, from the evidence, that he was reputed as married to Ann Eliza, the mother of Charles Myers, and a witness, who was not present at the wedding, says that he heard them say that they were married about the year 1812. This marriage, if it ever existed, must

have taken place while Catharine was still living, and about two years before the will was made.

From the facts of the case, it does not appear to us that the defendants have acquired any title from Charles Myers to any part of the land in controversy.   He was the only issue of an unlawful mariage, (if it ever existed,) between his father and Ann Eliza ; and if the latter was only his concubine, this circumstance cannot in any way authorize him to set up any claim to his father's succession, either as one of his children or under the will.   It has been clearly proved, by the acknowledgment of the deceased, that Catharine was *his former wife*, and that George and Frederick were *his legitimate children ;*  indeed, that is corroborated by the testimony of the witness, who states that *he understood from his father and mother that Catharine was married to Myers ;* and if so, Catharine being still living, and having even survived her husband, it is clear that Charles Myers, the son of Ann Eliza, was begotten from an unlawful second marriage, or from an open adulterous concubinage.   We agree with the judge *a quo* that Charles was incapable of inheriting from John F. Myers, either as legal or constituted heir ; and that George and Frederick Myers were the sole legitimate heirs of the deceased, and succeeded to all his rights.

The question of heirship and legitimacy being thus disposed of, we have next to inquire into the rights of the widow, transferred to David Kemp by virtue of her power of attorney.   It is doubtful whether the sale made by her agent would be sufficient to divest her of the property, as it might, perhaps, be successfully urged that the power was not sufficient, and that the agent went beyond the object of the authorization.   But her power of attorney alludes only to her *right of dower*, which she wishes to recover from the estate of her husband, and she obligated herself to comply with any contract or *sale* that might be made in transferring her right of dower.   This circumstance, coupled with the fact that the deceased declares in his will, produced by the defendants, that the land was granted to him by the Spanish government, shows that it was not community property, and that the widow had no right or claim to set up to any part of the land

itself, but only a right of dower which was conveyed to David Kemp.

Under this view of the legal rights of those from whom the parties to this controversy have derived their titles to the tract of land in dispute, it results, that George and Frederick were the only persons capable and competent to dispose of the title of their father to the tract of land inventoried as his property, and that the said tract was legally owned and possessed by each of them for one-half.

It is clear that David Kemp, having acquired all the rights of George Myers, who was of lawful age, to the estate of his father, has thereby become the owner of George's portion in the tract of land by him inherited from his father. The act of sale or transfer is in due form, and nothing, in our opinion, has been shown that can in any way affect the title so transferred by George to David Kemp; and so far, we must say that the plaintiff has shown an indisputable right to one-half of the land sued for.

To the other half, however, both plaintiffs and defendants have exhibited a title from Frederick Myers. The one to the plaintiff's ancestor, dated the 31st of May, 1817, whilst Frederick was a minor above eighteen years of age; and the other to the defendants or their authors, dated the 4th of December, 1837, which makes a period of nearly twenty years between the two sales; or, at least seventeen years, between the time of Frederick's majority, and his last transfer of his hereditary rights.

It has been strenuously contended by the defendants' counsel, that Frederick Myers having, legally, no capacity to contract, the sale and transfer by him made to David Kemp, is absolutely null and void, and that such nullity can always be opposed by him, (Myers,) or by his assigns, (*ayans cause*,) by-way of exception, whenever effect is sought to be given to the act passed during minority; and that under the rule "*quæ temporalia sunt ad agendum, sunt perpetua ad excipiendum*," no prescription can be invoked to destroy the effect of the exception.

It is true that, in this case, all the proceedings relative to the appointment of the curator who assisted the minor, and to the authorization by the judge, said to have been granted with the advice of a family meeting, are so irregular, that they can give no

force to the act of the minor, and that his act would not be bind-ing and obligatory, unless ratified by him, after having attained the age of majority. It is also true that, under the 1860th article of the Civil Code, contracts made by minors, without the inter-vention of the tutors or curators, or with such intervention, but un-attended by the forms prescribed by law, being legally void, may be declared so, either in *a suit for nullity* or *on exception*, with-out any other proof than that of the minority of the party, and the want of formality in the act. The law was the same in 1817; see 10 Martin, 731, where it was held, that when minors sue for the property by them illegally alienated, it is not necessary they should show they have been injured by the contract. But here no action of rescision was ever brought by Frederick Myers, dur-ing the time prescribed by our law; nor did he ever sue for, or do any act on the subject of the property by him sold, which, from the substance of the evidence, is shown to have been taken possession of by the vendee, and subsequently by his heirs, who continued to possess it, by themselves and by others, for more than ten years before they were disturbed by the defendants. It is contended, however, that the absolute nullity of the plaintiff's title results from its very face, and that it is opposed *by way of exception*. This question is not new in our jurisprudence; and it is difficult, if not impossible, to distinguish this case from that of *Delahoussaye* v. *Dumartrait*, reported in the 16th volume of the Louisiana Reports, page 92, in which this court held, that " the rule, relied on by the defendants' counsel, derived from the Roman jurisprudence, is now well understood to exist only *in favor of a defendant in the possession or exercise of the proper-ty, right or position attempted to be taken from him.*" It can-not, in our opinion, protect a party who has remained silent, and suffered a purchaser to remain in possession a length of time suf-ficient for the prescription of the action of rescision; and as Toullier says, (vol. 7, No. 602,) " *Si l'exception est perpétuelle, c'est quand le contrat n'a pas été exécuté.*" Were it otherwise, the law would be easily avoided, as under the protection of the rule relied on, it would often be convenient to a party, however old he might be, to disturb another in the peaceable enjoyment or possession of his property, to compel him to bring a suit, and

then to defeat his title by the exception of minority. The law of prescription would become a dead letter, and a man sixty years old would be enabled, by this indirect exercise of an action of nullity, to recover property alienated by him during his minority.

We must, therefore, conclude, that the rule above quoted is not applicable to the defendants' position ; that they cannot be protected under it ; and we agree with the judge *a quo* that a silence of seventeen years, after the age of majority, may be fairly considered as a tacit ratification of the acts of a minor. Under the provisions of our laws, the longest prescription for such acts is ten years, (Civ. Code, art. 2218 ;) and there are cases in which four and five years are sufficient. Ib. arts. 1870, 3507.

With this view of the questions presented to our consideration, we do not hesitate to say that the plaintiff has shown the best title to the land in controversy ; that the title to him transferred by Frederick, however defective originally, has become perfect by the lapse of time ; that said Frederick could not transfer to the defendants greater rights than he himself had ; and that the inferior judge did not err in sustaining the title set up by the plaintiff, as administrator of the estate of David Kemp.

*Judgment affirmed.*