(36 South. 842.)

No. 15,174.

## BONNIN v. TOWN OF CROWLEY.

(May 23, 1904.)

INJURY TO EMPLOYÉ—FELLOW SERVANT—DAN-
GEROUS APPLIANCES—APPEAL—IN-
CREASE OF DAMAGES.

1. The employé who obeys the order of the manager of his employer, and who does necessary work in defendant's service, is not to be considered, in a legal sense, as one who was engaged in work beyond the scope of his employment.

2. The employé is not the fellow servant of the manager of the master. Moreover, the plea was not specially urged.

3. An inexperienced employé should not be sent to do work where there is danger without instruction enabling him to guard against danger.

4. Pipes about the mill, subject at time to heavy pressure from escaping steam, should be screwed on the boilers with special attention and care.

5. The manager who had given the order did not testify. He was in charge of the plant.

6. The answer to the appeal, asking for an increase of the judgment, must be filed three days before argument.

(Syllabus by the Court.)

Appeal from Eighteenth Judicial District Court, Parish of Acadia; Conrad De Baillon, Judge.

Action by Ovignac Bonnin against the town of Crowley. Judgment for plaintiff, and defendant appeals. Affirmed.

Thomas Rutland Smith, City Atty. (Chappuis & Holt, of counsel), for appellant. Broussard, Dulany & Broussard and Medlenka & Taylor, for appellee.

BREAUX, C. J. Plaintiff instituted this suit for the sum of $10,000 for damages he avers he suffered in the death of his son, Laurent Bonnin, who was killed in an accident which occurred at the electric plant of the defendant. From an adverse judgment condemning the defendant, the town of Crowley, to pay $1,000, the defendant, the town of Crowley, appeals.

The petition sets forth, in substance, that plaintiff's son was killed by the explosion of a pipe. Plaintiff charges that the system of pipes in the electric plant of defendant, and the fitting connecting the pipes with the boilers, were defectively set in, and that they were, in consequence, dangerous; that the steam escape was not safe enough to enable any one to let water out of the boilers, when at high pressure, without danger; that the poor and dangerous condition of the machinery should have been known by the management. The father urges the inexperience of his son, that he was not given any notice of the danger, and that he was ordered to let the water out of the boiler, and, upon his complying, the pipe broke, and his son was scalded to death by the escape of the steam through the broken pipe.

The defense denies liability for the accident, and sets up that plaintiff's son was guilty of contributory negligence.

The jury returned a verdict in favor of plaintiff for $1,000, and, from the verdict and judgment of the court, defendant prosecutes this appeal.

Defendant sought to press on our attention the ground, urged for the first time in argument, that it was incumbent upon the plaintiff, in order to recover damages, to prove that the deceased had not left a widow and minor children, as they are entitled to preference, under article 2315, Civ. Code, over the surviving father and mother.

This point was not presented in the pleadings; it was not argued in the court below; and it follows that, as that court did not pass upon the objection, it can scarcely be considered as being regularly before us for decision.

None the less, we deem it best, in every way, to dispose of the point by stating that the testimony shows that plaintiff's son was barely of age, and not married, and therefore the requirement of the article was complied with in this particular.

There is no merit in this objection, any more than there is merit in the objection, urged without special plea to that effect, that the municipality of Crowley is not liable for damages; there being no statute under which such liability arises.

This ground of objection should have been urged in the lower court by plea. In the absence of all pleas in that respect, we do not think we should pass upon this last-mentioned point at all.

This brings us to a consideration of the merits, which we will precede by a summary of the facts.

These are that the young man was killed in the early part of the night. The testimony discloses that Mr. Durio had charge of the plant. He was its superintendent, although the council retained the direction and management, through orders given to the superintendent. They commanded, and this officer saw to the execution of their orders.

Laurent Bonnin, the deceased, was a lineman in the employ of defendant. The testimony proves that he was industrious; sought to learn and improve himself in his line of work. His habits were good, and also his character.

A young man, Guidry, the fireman, put on the pipe and fittings to the boiler, which broke, as before mentioned, and which caused the injury. He had no experience in such work. He had never fitted on a pipe before fitting this one.

The pipe extended out from the boiler, and down in the direction of the ground, in the shape of a Z. It formed two elbows. This pipe is known as the "blowpipe," and is used to blow off steam and sediment from the boiler. The steam, in blowing out mud or sediment, is made to escape by means of a steam valve.

On the night fatal to the life of plaintiff's son, he was ordered by Durio, the manager, to let off the steam through the pipe in the rear of the boiler, and thereby clean the boiler. In complying with this order, the young man walked into the boiler room and went to the pipes, and, it is presumed, turned on the steam too hastily, and caused thereby pressure that broke the pipes and killed him.

The young man had no experience, and no testimony shows that he was warned to be careful, and taught in any way how to turn on the steam safely to avoid an accident.

Having stated these facts, we are brought to a consideration of the merits of the case.

Defendant's first ground on the merits is that plaintiff's son, at the time that he met his death, was not acting within the scope of his employment.

It is true that ordinarily the deceased did the work of a lineman, but it is also true that at the time of the accident he was executing an order from the manager in charge. He was acting for the municipality, and in its service, under the direction of its own agent.

The work to which he applied himself was not voluntary. We infer that it was useful, and even necessary. It does not appear that the manager was thought incompetent at the time. His direction to the son of plaintiff was sufficient to obtain the service the deceased attempted to perform for the defendant municipality. An employé assumes the risk of work done voluntarily outside the scope of his employment. But here there is nothing to show that under his contract he (this employé) was not to be called upon to do the work he attempted to do.

Where work, although extra work, is undertaken by the employé at the command or explicit direction of the master or his agent, the master is liable. This was the case in this instance. Buswell on Personal Injuries, § 211.

We think that the defects were the cause of the accident, and the inexperience of the deceased, who should not have been sent to do this work in the nighttime in a narrow

place between walls. The screwing and unscrewing of blowpipes required, we are inclined to think, some experience.

Besides, we are not satisfied that these pipes had been properly screwed on, and that the appliances were in good condition.

After the steam which escaped from the broken pipe had evaporated, and it was possible to see in the boiler room, the broken pipe and mud valve were found on the floor, lying about in such a manner as to give rise to a strong impression that they had not been carefully put on. The pipes were not offered in evidence, and defendant's manager, Durio, was not called upon to testify as a witness, although he must have been aware of some of the important facts.

There is testimony going to show that the pipe should not have been put on, as it was, in change of direction at right angle. Straight pipes, as they offer less resistance, are much the safer of the two. There is direct and positive testimony that the machinery was not in the best order and condition, and, although this testimony is not uncontradicted, in so far as it is corroborated by the circumstances and the result it should be given preponderating weight.

The fellow-servant doctrine not pleaded, but invoked in argument, has no place in this case, for the victim of the casualty was not the fellow servant of Durio, the manager. It may be that he was not directly employed by this manager, or that he was not to be discharged by him of his own motion; and yet it was this manager he was to obey, who would have reported him, had he failed in all his duties, and it was the manager who could by his report have obtained his discharge from the defendant's service.

But we return to the want of the plea. The servant doctrine should be specially pleaded, in order to obtain the certainty that it will prove of any avail in deciding the case.

The quantum of damages presents another issue of decision. Plaintiff and appellee answered the appeal, and asked for an increase of the judgment from $1,000 to the amount claimed in his petition.

The case was fixed April 25, 1904, to be tried on May 11th, and on the last date plaintiff and appellee filed his answer, claiming an increase of damages. On the 11th of May the case was continued to May 12th, and on the last-mentioned date the case was argued and submitted.

From the foregoing, it appears that the answer praying for an amendment increasing the amount was not timely filed. The answer must be filed at least three days before argument, when an increase of damages is asked. Code Prac. art. 890.

No alternative remains to us, save to give effect to clearly laid down principle of this article.

The law and the evidence being with the plaintiff, the judgment appealed from is affirmed at appellant's costs.