PROVOSTY, J.
Four brothers (J. S., J. H., W. S. D., and W. Hamilton) and their sister (Miss Penelope Hamilton) owned in- indivisión a plantation of 3,000 acres in the parish of West Feliciana. W. Hamilton was an inmate of the insane asylum at Jackson, Miss., and .an interdict, and J. S. Hamilton was his guardian, or curator. In September, 1880, J. H. Hamilton brought a suit for partition. In kind, if possible; otherwise, by means of a sheriff’s sale at public auction. Experts, duly appointed and sworn, reported that the property could not be partitioned in kind without diminution of value, and a sale was, in due course of proceedings, ordered to be made for cash, and it was duly advertised. On the day set for it to take place, and just before the crying, the three sui juris brothers agreed in writing to bid in the property, and thereafter divide it between themselves and their sister by assigning to each in severalty a specific part duly described in the agreement. The part of the price of the sale coming to the interdict and his share of the costs were to be paid by J. S. and J. H. Hamilton. The property was adjudicated to the three brothers. Appraisers, duly sworn, had appraised it at $7,500; it was sold for $10,000. Whether there was any competition at the sale is not shown. The parties were unable to agree in the choice of appraisers, and the court had to be applied to to make the selection. From this fact, the inference would be that the suit was not a mere consensual affair. The appraisement was made on the day itself of the sale, January 15, 1881. Whether before or after the said written agreement had been entered into, the record does not show. The sheriff’s proces-verbal of the sale recites that the adjudicatees were “the last and highest bidder,” and that the $10,000 was paid cash. From the fact that the price of the sale exceeded the appraisement by $2,500, the inference would be that there was competition. There is in the record a power of attorney from Miss Penelope Hamilton to one of the brothers, party to the agreement, to receive and receipt for her distributive share of the price of the sale. This power of attorney is dated the day itself of the sale, January 15, 1881. Whether it was executed before or after the agreement was entered into is not shown; but the inference would be that it was before, since it purports to have been executed at Laurel 1-Iill, which is at a considerable distance from St. Francisville, the parish seat, where the sale took place, and where the agreement was entered into. On the day itself of the sale, the several parties gave their receipts to the sheriff for their shares of the price; the brother, agent of the. *305 sister, receipting for her. On February 7, T881, about a month after the sale, the three brothers, adjudicatees of the sale, made title to their sister to the part assigned to her in severalty in the agreement. The deed to her recites that it is made to carry out the agreement under which .the property was purchased by the three brothers. W. S. D. Hamilton refused to carry out the agreement; and suit was brought against him on February 9, 1881, two days after the execution of the deed to the sister, to compel him to do so. The sister joined in this suit as a party plaintiff. A few days thereafter, the recalcitrant brother consented to carry out the Agreement, and the suit was dismissed. The agreement was then consummated by each of the brothers being assigned his part in severalty as agreed. All this was done by authentic acts, duly recorded, and the agreement itself was recorded. J. S. Hamilton, the guardian, was a resident of Jackson, Miss., and he and the interdict were cited through a curator ad hoe. He appeared to the suit and filed an answer for himself individually and for the interdict. As guardian, he receipted to the sheriff for the share of the interdict, $1,952.20. The interdict continued insane until his death, in May, 1904; and the present suit was brought by his son and heir six years and- seven months thereafter, in December, 1910.
It is a petitory action to recover one-fifth undivided of a part of that part of the property that was assigned to the sister, and subsequently deeded to her, under the agreement. It is brought against the person in possession, who is alleged to be possessing without title and in bad faith for himself and as farmer, or lessee, of another. All the facts are alleged in extenso in -the petition, and then the averment is made that the partition suit and sale were fraudulent simulations designed to divest the title of the interdict and enable the parties sui juris to make an amicable partition, and that the said partition and sale, being mere simulations, were-null and ineffective; and that the same were, furthermore, null and ineffective, so far as divesting the title of the said interdict was concerned, for the reason that they were purely consensual, and the guardian of the interdict was without authority to give a valid consent for him.
The grounds thus alleged in the petition are now no longer relied on by the learned counsel for the plaintiff; but the contention now is that no part of the price of the partition sale was paid, and that, as a consequence, there was no sale, and the title of' the interdict has never been divested. And, in support of this, the decision of this court in the case of Miguez v. Delcambre, 128 La. 333, 54 South. 870, is cited.
[1] J. H. Hamilton had a perfect right to bring the partition suit; he and his two brothers had a perfect right to buy at the sale, either separately or together, and had the perfect right to agree to buy together for the purpose of afterwards partitioning amicably, and had the perfect right to agree in advance upon the terms of the said partition. They did buy, and did partition, and for 30 years have held under this new title. Under these circumstances, it certainly cannot be said of the partition suit and sale that they were simulations, whatever else-may be said of them.
[2] We dó not think there is any good ground for suspecting fraud. Fraud is never presumed; and the inability of the parties to agree upon the appraisers, and the fact that the property brought $2,500 more than the appraisement, are, especially, at this late day, strong indications of good faith.
[3] The want of authority on the part of the guardian to give a valid consent for the interdict would give rise only to a relative, not to an absolute, nullity. C. C. art. 1791. I Relative nullities in matters of partition are *307 •cured by the prescription of five years. C. C. art. 3542; Vaughn v. Christine, 3 La. Ann. 328; Seyburn v. Deyris, 25 La. Ann. 484; Lea v. Myers, 4 Rob. 8; Jamison v. Smith, 35 La. Ann. 609. And this prescription is pleaded by the defendant. This suit was brought six years after the death of the interdict.
[4] A partition suit and partition sale, if only relatively null, not absolutely null in the sense of nonexistence, cannot be ignored, as if having never taken place, in a suit to recover the property.
The present suit being a petitory action to recover the property- — that is to say, a suit which ignores entirely the partition suit and the partition sale — the learned counsel for the plaintiff was wise in abandoning the •said grounds, specifically set forth in the petition, and grasping at some other straw for .saving his case.
[5, 6] Prom the fact that the sale to the .sister by the three brothers was declared in the deed of sale to have been for the purpose of carrying out the agreement under which the three brothers purchased the property, the learned counsel for the plaintiff deduces the conclusion that the sister paid no part of the price, and from that he argues that, the sister not having paid her part of the price, the brothers did not pay theirs; and hence that no price was paid. After 30 years, it would not do to allow the recitals of official documents to be contradicted and overcome and titles overthrown by such inferences as these; but, even if it were conceded, for argument, that no price was paid, in the sense of no money having actually passed from hand to hand, what legal objection could there be to the three brothers buying at the sale and paying that part of the price that would eventually come to them by receipting to the sheriff for it? Learned counsel for the plaintiff admits there would be none. The law favors and expressly sanctions such arrangements. C. C. art. 1343. Well, then, why should not the guardian for the interdict and the agent for the sister, have been in just as good a position to receipt in like manner to the sheriff; they being fully authorized to receive the actual money itself from the sheriff? The law looks to the substance of things, and not to idle forms; if the sale would have been valid if the three brothers had handed over the actual money to the sheriff, and the sheriff immediately handed it back to them, it was valid, if they and the sheriff, acting on the assumption that this idle ceremony would be gone through with if insisted upon by either party, dispensed with it, and simply passed their receipts for the money.
[7] The plaintiff testified that neither the interdict nor he ever received any part of the $1,952.20, thus receipted for by the guardian. If so, the recourse is against the guardian.
In the Miguez v. Delcambre Case, supra, the court expressly said that the situation would have been different if the administrator himself, who, as partner in community, was competent to buy, had taken title.
Judgment affirmed.