ODOM, Justice.
 

 This is a suit to partition by licitation 40 acres of land situated in the heart of the Rodessa oil field in Caddo parish, brought by Myrtle Bickham, curatrix, on behalf of Pearl Nugent, an interdict. It is alleged that the interdict owns an undivided one-fourteenth interest in the land and that her ownership of this fractional interest is not disputed or contested. It is further alleged that it was decreed in a judgment lately rendered in suit No. 67249 of the docket of the district court of Caddo parish, the same court in which this partition suit was filed, styled Myrtle Bickham et al. v. Mattie L. Pitts et al., an appeal from which judgment is now pending in the Supreme Court, that said interdict owns an additional one-fourteenth interest in the said land, which additional interest is in contest.
 

 It is further alleged that, according to said decree, the remaining interest in the land is owned by the following named persons in the proportions named: Mattie L. Pitts, one-seventh; Ruby Gladys Pitts and Mancell G. Pitts, one-fourteenth each; Myrtle Bickham (née Nugent), one-seventh in her own right; Walter L. Nugent, one-seventh; Oscar Zylks, Lorine Bright, Edna Vucinovich, Bertha May Abbott, Marie, Pauline, and Carol Zylks, one forty-ninth each; Harold, Gilbert, and Arnold Trimble and Louise Thornton, one twenty-eighth each; that a suspensive appeal from said judgment is being prosecuted by Mattie L., Ruby Gladys and Mancell G. Pitts, who claim the entire interest in said property except a one-fourteenth interest which they admit is owned by Pearl Nugent, the interdict, and that devolutive appeal is being prosecuted by John F. and George W. Nu-gent, who are claiming the interest awarded by the said judgment to Mattie L., Ruby Gladys and Mancell G. Pitts.
 

 It is alleged that the 40 acres of land is in the midst of a proven oil and gas field and that its chief value is in the oil, gas, and other minerals which may be found in and under its surface, that there are producing oil wells on all sides of it and that it is being
 
 *935
 
 drained, and will continue to be drained, of its oil and gas, and that on this account its value will be constantly diminished, and that due to its location in the midst of the oil field it is subjected to' continuing and destructive trespass.
 

 The curatrix alleges that she, representing the interdict, is not willing that the land shall remain longer in undivided ownership, that it is indivisible in kind and should be sold to effect a partition, and that it would be to the advantage of the interdict as well as her co-owners that it be sold at the earliest possible date and that the proceeds of the sale should be distributed, in so far as the interest not admittedly owned by the interdict, in accordance with the final judgment rendered by the Supreme Court in suit No. 67249, styled Myrtle Bickham et al. v. Mattie L. Pitts et al., now on appeal.
 

 Plaintiff prayed that each of the persons named in the aforesaid judgment as being owners of an interest in the land, as well as John F. and George W. Nugent, who were parties in suit No. 67249, be made defendants and cited in the partition proceedings.
 

 It was alleged that some of the defendants were minors who had no tutors and some of them absentees, and plaintiff prayed that attorneys be appointed to represent them in the suit and for judgment ordering the land partitioned by licitation “and directing the Sheriff of Caddo Parish, Louisiana, to sell the same at public auction * * * to the highest bidder * * * and directing him further to pay the cash proceeds over to a notary public for partition; and directing the said notary to pay one-fourteenth of the net cash proceeds * * * to petitioner or such legal representative as may be appointed to receive the same for and on behalf of Pearl Nugent, the interdict, and to hold the remainder to abide the final decision in suit No. 67,249 aforesaid, and eventually pay it out to the persons entitled thereto -under such decision.”
 

 The defendants, Mattie L., Mancell G., and Ruby Gladys Pitts, filed an exception of nonjoinder, the basis of which was that, prior to the filing of the suit No. 67249 in the district court (which suit involves a contest among the various litigants named above over title to the said land), some of those involved in that and the present suit had granted to R. W. Norton an oil and gas lease on the land; that Norton had transferred the lease to others; that said parties had sold royalties to others; and that the lessees and the royalty owners were-proper and necessary parties to this partition suit.
 

 The exception was overruled, and properly so. The lessees and royalty owners are not co-owners of the land, and it was not alleged or sought to be shown that any of them had actually developed or made any move to develop the land for minerals. Spence v. Lucas, 138 La. 763, 70 So. 796; State ex rel. Bush v. United Gas Public Service Co., 185 La. 496, 169 So. 523.
 

 Defendants cite the case of Liles v. Barnhart et al., 152 La. 419, 93 So. 490, in support of their contention. In that case Barn-hart, who claimed to own the entire interest in the land, granted a mineral lease to the Gulf Refining Company covering the land. That company developed the land, took therefrom large quantities of oil, and had
 
 *937
 
 placed on the land expensive improvements. Liles, who had previously been recognized by judgment as the owner of a one-fifth interest in the land, sued for a partition thereof by licitation and for his part of the value of the oil, making the oil company a party defendant, which was proper under the circumstances. That case is different from this, in that the lessees here have not developed the land for oil or gas and have not placed thereon any improvements whatever.
 

 The same defendants then filed an exception of no cause or right of action, which was referred to the merits and finally overruled. The same defendants filed a motion to stay proceedings under this partition suit until the judgment in the other suit should become final. This motion was overruled.
 

 All defendants filed- answers in which they admitted that Pearl Nugent, the interdict, plaintiff in this suit, owned an undivided one-fourteenth interest in the land and that judgment had been rendered by the district court decreeing that • the land was owned by the persons and in the proportions named in the judgment, all as alleged by the plaintiff. They set out that said judgment was not final, and until it became final no judgment ordering sale of the land and a division of the proceeds should be entered.
 

 There was judgment for the plaintiff ordering a partition by licitation; that the land be sold at public auction for cash by the sheriff and that he “pay over the proceeds, less the costs of advertising and sale, to V. G. Simmons, Clerk of this Court and Ex-Officio Notary Public, who is hereby directed to deposit the same into the registry of the Court subject to its further orders.” The defendants, Mattie L., Mancell G., and Ruby Gladys Pitts, appealed suspensively from this judgment.
 

 The present suit for partition was filed after the judgment was rendered in suit No. 67249 in the district court of Caddo parish, styled Myrtle Bickham et al. v. Mattie L. Pitts et al. In that case, as we have already stated, the district judge found and finally decreed that certain individuals who were parties to that suit owned in the proportions stated the entire interest in the 40 acres of land sought to be partitioned by licitation in the present suit'. There was an appeal from that judgment, and that appeal is now pending in this court.
 

 It is necessary here to state the issues involved in that case in order that those inT volved in the present suit may be properly understood. The facts involved in that suit were that the 40 acres of land now sought to be partitioned was owned by the community which existed between B. F. Nugent and his wife, Mollie. The fact that perfect title to the land was vested in that community was not questioned by any of the litigants in that suit or in this. B. F. Nu-gent died in 1900. There were seven children issue of his marriage to Mollie. Twenty years after his death, the widow, Mollie Nugent, and five of the children of that marriage sold their 'undivided interest in this land to John, one of the children, for a purported consideration of $1 cash and other valuable considerations. Pearl Nu-gent, the plaintiff in the present case, was then, and always has been, an imbecile, and for that reason did not join her mother and
 
 *939
 
 five of her brothers and sisters in making the sale to her other brother, John.
 

 On January 29, 1925, John Nugent, who had purchased this 40 acres of land, and his brother, George, who had sold his interest therein to John, executed a mortgage to A. C. Pitts to secure their in solido note to him for $2,000; included in the mortgage were this 40 acres of land owned separately by John Nugent and several parcels of property owned by George Nugent individually, these parties apparently having included in the mortgage all the property which each owned.
 

 A. C. Pitts, in whose favor the mortgage was made, died while it was in force, and his widow and heirs foreclosed via ordinaria, obtained judgment, had all the property covered by the mortgage, including this 40 acres, sold under a writ of fi fa, .and bought it in on January 3, 1934.
 

 Mrs. Mollie Nugent died in 1926, and on September 25, 1935, all of the Nugent heirs filed suit to have the purported conveyance to John Nugent decreed null ab initio and to annul the foreclosure sale for certain alleged irregularities and to have the mortgage on the 40 acres restricted to the undivided two-sevenths interest inherited .by George and John Nugent from their parents.
 

 The widow and the above-named heirs of A. C. Pitts were made parties defendant to the suit. The issue involved therein was whether this 40 acres of land belonged to the Nugent heirs or to the widow and heirs of A. C. Pitts. It was held by the district judge that an undivided five-sevenths interest in the property belonged to five of the Nugent heirs and that the two-sevenths interest therein which was inherited by John and George Nugent belonged to the widow and heirs of A. C. Pitts.
 

 We have stated in detail the above facts merely in order to show that in the present suit for partition brought by the curatrix of Pearl Nugent each and every person who has any claim or interest in this land is now before the court either as plaintiff or defendant, for, as we have stated, each and every one of the claimants in the other suit (except Pearl Nugent), whether as plaintiff or defendant therein, was cited and brought into court in the present suit.
 

 Defendants in their appeal in this case assign as one of the errors committed by the district judge the overruling of the exception of nonjoinder. We have already disposed of that alleged error. They also say that it was error for the district judge to refer the exception of no cause of action to the merits, and cite Waterhouse v. Star Land Co., 139 La. 177, 71 So. 358, and Bijou Co. v. Lehmann, 118 La. 956, 43 So. 632, where it was held by this court that an exception of no cause of action should be disposed of before a trial on the merits and should not be referred to the merits.
 

 While that is true, yet the court did not hold, nor has it ever held so far as we recall, that it was reversible error for the judge to refer such exceptions to the merits. As a matter of fact, it is proper under some circumstances that such be done.
 

 It is further argued that the trial judge erred in finally overruling the exception of no cause of action. The basis of this exception was that the plaintiffs did not
 
 *941
 
 pray that the interest of the interdict and the interest of the defendants be fixed by the court in its judgment. It is true, as counsel state, that in partition suits it is necessary that the respective interests of all parties be determined and fixed, and true also that ownership is the basis of the action of partition. This court has several times held that a plaintiff, in order to support his action for partition, must prove his own title, must cite and bring into court all adverse claimants, and that, before the partition is completed, the court must determine definitely the respective, interests of the adverse parties.
 

 In the present suit for partition the plaintiff alleged, and defendants all admitted in answer, that Pearl Nugent, the interdict, owned an undivided one-fourteenth interest in this land. .It was therefore unnecessary for the plaintiff to introduce proof on that point. The reason why the plaintiff did not ask that the interests of the adverse parties be determined in this suit was that the record in suit No.
 
 67249
 
 was made a part of the pleadings in the present suit, and in the former suit the interest of all parties was determined and fixed by the judgment therein rendered. The plaintiff could not know, of course, what the final opinion of the Supreme Court would be as to who were the owners of the thirteen-fourteenths interest in the land, and for that reason referred to the said judgment praying that the proceeds of the sale, except the one-fourteenth interest admittedly owned by the plaintiff, should be distributed on final partition in accordance with the final decision in the former case.
 

 As we have stated, all parties at interest in this suit were parties to the former suit ’where their interests were determined and fixed, and for that reason we think it was unnecessary for the plaintiff here to ask the same court and the same judge to pass again upon the question as to the title of the various litigants.
 

 Counsel also argue that the trial court erred in overruling their motion to stay the proceedings in this case until final judgment in the other case is rendered by this court. We think the judge properly overruled the motion. It is true that no final judgment has been rendered determining the proportionate interest of the adverse claimants. But we think, under the exceptional circumstances here involved, that is no reason why the court should not order that the property be sold in order to effect a partition. Of course, the partition cannot be completed until final judgment is rendered on appeal definitely fixing the interest which the respective parties own in the land. The district judge did not order the proceeds distributed according to the judgment which he had previously rendered fixing those interests, but merely ordered that the property be sold and that the proceeds be turned over to the clerk of the court and deposited by him in the registry of the court to be distributed in accordance with the further orders of the court. The parties contemplated, and the judge of course understood, that, when the judgment of this court becomes final as to the respective interests owned by these parties, an application would be made for the final partition or distribution of the proceeds among those finally adjudged to be the owners of
 
 *943
 
 it and in the proportions named, and that all parties would be referred to a notary public for the completion of the partition.
 

 Counsel seem to think that the judge should have named a notary to complete the partition in the judgment ordering the property sold to effect the partition. They have cited neither codal provision nor any decision in support of the suggestion.
 

 The sale of property to effect a partition is but a preliminary step to the partition. The partition consists of the division of the property itself or its proceeds in case it is sold to effect the partition. Dees, Administratrix, v. Tildon et al., 2 La.Ann. 412. We know of no reason, and none has been suggested, why the judge who has determined the method for making the partition should not by subsequent order refer the parties to a notary to complete the partition.
 

 Counsel for appellants argue that it would be unfair to them to order the property sold prior to final determination of the proportionate interest owned by the respective litigants, for the reason that, if they or any one of them should purchase the property at partition sale, the purchaser would be compelled to pay the price of the entire property in cash, whereas article 1343 of the Civil Code provides that “any coheir of age, at the sale of the hereditary effects, can become a purchaser to the amount of the portion owing 'to him from the succession, and he is not obliged to pay the surplus of the purchase money over the portion coming to him, until this portion has been definitely fixed by a partition.”
 

 There is no merit in this argument, for the reason that this is not a sale of “hereditary effects.” These appellants are not coheirs, but alleged co-owners of the property, and it has been held that the right granted by article 1343 of the Civil Code is personal to the heirs and that other persons are not entitled to the benefits conferred by that article. In Prescott, Administrator, v. Gordon & Bates, 22 La.Ann. 250, the court in discussing the provisions of articles 1343 and 2625, said:
 

 “These articles must then be construed strictly, and can not be extended beyond their terms by analogy. Both articles speak of ‘heirs’ only, and courts are not at liberty to extend the exception to other persons,” citing Landry v. Le Blanc, 4 Rob. 37 and Dees v. Tildon, 2 La.Ann. 412.
 

 The cases of Hamilton v. Hamilton, 130 La. 302, 57 So. 935, and Nichols v. Bryan et al., 143 La. 291, 78 So. 562, dó not establish a different rule.
 

 The testimony adduced in the district court showed unmistakably that a speedy sale of this property is necessary in order to protect the interests of all parties. The property consists of 40 acres of land situated in the heart of an oil field where there are literally scores of oil wells already completed, from which thousands of barrels of oil have already been taken and which are still producing oil; the testimony shows that there are producing oil wells on every 40 acres of land adjoining that here involved, and that numerous other wells are being drilled in the same vicinity.
 

 The testimony of experts shows further that oil is a fugitive mineral and that the extraction of it from a certain tract of land
 
 *945
 
 drains the oil from beneath the surface of adjoining lands. From the fact that oil is being extracted from the lands on all sides of this small tract, the testimony of these experts makes it manifest that ultimately all or the greater portion of the oil beneath this land will be drained out. The witnesses testified that experience shows that, when oil lands are developed to the extent shown to have been carried on in the Rodéssa field, all the oil is finally drained out, and that the field ultimately becomes worthless for mineral purposes. The testimony convinces us, as it must have convinced the trial judge, that the value of this particular piece of land is being diminished day by day, and that, in order that the parties interested, whoever they may be, may reap the full benefit of their mineral rights, a speedy sale should take place.
 

 Counsel for defendants cite the case of Knapp v. Dupont et al., 149 La. 491, 89 So. 631, 633, as authority for holding that property should not be sold in order to effect a partition until a final determination of the respective interests owned by the defendants. In that case the court held that the defendants were entitled to a postponement of the sale, but the reason was that it was contended that the plaintiff in the partition suit had no real or personal interest in the matter, but had entered the suit merely to subserve the interest of the defendants in a petitory action then pending with the object of monopolizing bidding at the partition sale. The court in the course of its opinion said:
 

 “Our opinion is that the defendants in this case [the partition suit] should be allowed to prove, if they can prove, the charge . that plaintiff’s demand to have the land sold before the question of title can be determined in the petitory action is in furtherance of an agreement between him and the defendant in the petitory action to monopolize the bidding.”
 

 They also cite the case of State ex rel. Saint v. Houssiere-Latreille Oil Co., 123 La. 853, 49 So. 596, 599, where the court held that, “in all cases where justice requires that a cause should remain in abeyance until another cause involving the right of the parties pending in the same court or in another is finally disposed of, a staying order is the proper order to enter and not an order dismissing the cause.” In the present case neither does justice nor the interest of the parties require a postponement.
 

 Counsel for defendants moved for trial of the case by jury. This motion was correctly overruled by the trial judge. If there is any codal or other law or any decision of this court which provides for or authorizes the trial of partition suits by jury, we have no knowledge of such law or decision, and counsel have failed to refer us to any. Article 494 of the Code of Practice provides that certain suits shall be tried by the judge unless a jury is asked for by either the plaintiff or the defendant. A partition suit does not fall under the provisions of that article of the Code, nor does it fall under th'e provisions of any other law so far as we know. One reason why partition suits should not be tried by juries is that juries, which are necessarily composed of laymen, are not competent to pass upon the issues necessarily involved in partition suits.
 

 
 *947
 
 The provisions of article 494 of the Code of Practice relating to trial of cases by juries refer to cases involving an unconditional obligation on the part of the defendant to pay a specific sum of money, or cases where the suit is on a promissory note or other obligation, and the defendant makes oath that his signature to the note or other evidence of indebtedness is not genuine or that he expects to prove that the same had been obtained through fraud or error or want or failure of consideration, and cases where the defendant in his answer sets up a plea of compensation or reconvention. Suits for partition do not involve an obligation on the part of the defendants either to pay or to do anything whatsoever.
 

 In a supplemental brief filed by counsel for defendants it is suggested that some of the absentee and minor defendants were not properly brought into court. As this question was not raised in the district court, it cannot properly be considered by us. However, since the supplemental brief referring to that question was filed counsel for plaintiff have filed in this court a document executed and signed by each of these parties stating that he or she had due notice by proper service of the proceedings in the lower court and elected not to make an appearance, and now acquiesce in the judgment of the lower court and pray that their appearance herein be recognized for that purpose. The document is duly authenticated.
 

 For the reasons assigned, the judgment appealed from is affirmed.