FOURNET, Justice.
 

 Plaintiff, assignee of an oil and mineral lease executed in favor of H. H. Lawson by eleven of the many co-owners of a small tract of land measuring approximately 8 acres, situated in Section 7, T. 2 S., R. 3 E., Avoyelles Parish, Louisiana, in what is known as the Eola Oil Field, not having been made a party to the proceedings partitioning the property by licitation, instituted this suit against the several co-owners of the land to set aside the judgment rendered in that proceeding on the ground that the same was null and void, and on the same day filed a notice of lis pendens in the mortgage records of Avoyelles Parish.
 

 The principal ground upon which the action is based is that plaintiff, as the owner of the said mineral lease, was a
 
 *364
 
 necessary party to the partition proceedings. Plaintiff also alleged, in effect, (1) that the partition was an ex parte or “consent proceeding” instituted for the purpose of depriving it of its property without due process of law; (2) that all of the co-owners were not made parties to the proceedings; (3) that the curator ad hoc appointed to represent the absent heirs did not make any defense to the proceedings in his answer but admitted the allegations of the petition and concurred in the prayer thereof, thus, in effect, consenting to the partition by licitation; and (4) that no allegation was made that the property was not susceptible of being divided in kind or experts appointed to determine that issue, nor any evidence adduced on the trial of the case to establish this fact, although, in truth and fact, the property is susceptible of being partitioned in kind.
 

 The defendants excepted to the petition on the ground that it was too vague and indefinite and that it did not disclose a cause or right of action and, subsequently, with reservation of their rights.under the exceptions, filed their answer generally denying the allegations of plaintiff’s petition, setting up as a special defense that land held in indivisión among several persons cannot be leased for the exploitation of minerals or otherwise burdened with real obligations by any of the co-ówners without the consent, express or implied, of all the others, and that, consequently, plaintiff holding a mineral lease from some of the co-owners of the land without the consent of the remaining co-owners could not interfere with the absolute right of the co-owners to partition the property and was not, therefore, a necessary party to the proceedings.
 

 There was judgment in the lower court setting aside the partition proceedings and recognizing plaintiff’s rights under the lease acquired by it, and the defendants have appealed.
 

 The. property in controversy was acquired on November 7, 1872, by Dominick Bernard, who was then married to Martha Williams. Dominick died in 1895 arid his wife in 1899, but their successions were never opened until March 7, 1939, when five of their direct descendants and heirs, joined by a transferee of another of the heirs, instituted, under the title of “Succession of Dominick Bernard and Mrs. Martha Williams, Widow of Dominick-Bernard,” No. 904 of the Probate Docket for the Parish of Avoyelles, the combination succession and partition proceedings here sought to be set aside, making the other heirs or their assignees or transferees parties defendant.
 

 At that time there were living twenty-three direct descendants ánd heirs of Dominick and Martha Bernard, most of whom had either transferred their rights to third parties or to one. of their co-heirs, and the ownership of the property was therefore vested in the following persons in the proportion designated, as decreed by the court in its judgment rendered in the matter: Joseph A. Bernard, 39%68ths; Edmund Young, °%68ths; Mrs. Maude Ber-'' nard Reese, 4%68ths; Mrs. Hazel Bernard Roberts, 4%68ths; Mrs. Amelia Hawkins Robertson, 4%68ths; Andrew Young, 2%G8ths; Octavia Bernard, %68ths; Charles
 
 *366
 
 Bernard, %68ths; Mrs. Hannah Bernard Clayton, %68ths; ■ Edward Bernard, %esths; Alzar Simpson, 4%68ths; John E. Perkins, 2%68ths; and Gordon B. Hyde, ^esths. The first eleven are descendants and heirs, the latter three assignees and transferees of some of the descendants and heirs of the deceaseds.
 

 On May 27, 1939, J. Fant Taylor having offered the highest bid, the property was adjudicated to him “free of all encumbrances, liens and servitudes of any kind whatsoever,” and the mortgage of $4,000 against the property having been satisfied, the remainder of the purchase price, $1,000 was, on June 9, distributed among the co-owners according to their pro rata share. It was accepted by them through their representatives in an act passed before E. H. Shwartzenburg, Notary Public. Taylor, the purchaser of the property, was not made a party to the instant suit.
 

 Prior to the institution of the partition proceedings, H. H. Lawson, on October 24, 1935, acquired from eleven of the descendants and heirs of the deceased an oil, gas and mineral lease of their interest in the property which he transferred to the plaintiff on December 2, 1935. W. D. Haas, Jr., likewise, prior to the institution of the partition proceedings, acquired leases from three and royalty deeds from seven of the co-owners, and instituted an action (also on appeal here, 196 So. 564
 
 [1]
 
 ), to set aside the partition proceedings. The cases, for purposes of trial, were consolidated. The record further reveals that of the twenty-three living descendants and heirs of the deceased, seven have not.signed either the leases or royalty deeds acquired by the plaintiff and W. D. Haas, Jr.
 

 Under the' express provisions of the Revised Civil Code and the jurisprudence of this state, no one can be compelled to hold property in indivisión with another, and, for this reason, each of the co-owners is given the absolute right “ * * * unless the contrary has been agreed upon * * * to demand the division of
 
 a thing held in common,
 
 by the action of partition.” Article 1289. (Italics ours.) See, also, Articles 1297, 1299, 1304, 1307, 1308, 1311, and 1318; Gravier v. Livingston, 6 Mart., O.S., 281; Rachal v. Rachal’s Heirs, 10 La. 454; Beltran v. Gauthreaux, 38 La.Ann. 106; Reynolds v. Reynolds, 43 La.Ann. 1118, 10 So. 303; Hansell v. Hansell, 44 La.Ann. 548, 10 So. 941; Sallier v. Rosteet, 108 La. 378, 32 So. 383; Succession of Glancy, 108 La. 414, 32 So. 356; Maguire v. Fluker, 112 La. 76, 36 So. 231; Giglio v. Giglio, 159 La. 46, 105 So. 95; Grouchy v. Williams, 161 La. 909, 109 So. 545; Marrero v. Nelson, 166 La. 122, 116 So. 722; Raceland Bank & Trust Co. v. Toups, 173 La. 742; 138 So. 652; Bickham v. Pitts, 185 La. 930, 171 So. 80; Sellwood v. Phillips, 185 La. 1045, 171 So. 440; Kelly v. Kelleher, 186 La. 51, 171 So. 569; and Mitcham v. Mitcham, 186 La. 641, 642, 173 So. 132. However, all of the co-heirs or owners in indivisión of the property to be partitioned must be made parties to the proceedings in' such an action. The failure, to make any
 
 *368
 
 one a party vitiates the partition as to all. Article 1412 of the Revised Civil Code; Guidry v. Guidry’s Heirs, 16 La. 157; Kendrick’s Heirs v. Kendrick, 19 La. 36; Willey v. Carter, 4 La.Ann. 56; Rightor v. De Lizardi, 4 La.Ann. 260; Boutte v. Executors of Boutte, 30 La.Ann. 177; Ware v. Vignes, 35 La.Ann. 288; Union National Bank v. Choppin, 46 La.Ann. 629, 15 So. 304; Smith v. Smith, 131 La. 970, 60 So. 634; Crayton v. Waters, 146 La. 238, 83 So. 540; Wheeler v. Mann, 149 La. 866, 90 So. 225; Latham v. Glasscock, 160 La. 1089, 108 So. 100; and Stoma v. Smith, La. App., 172 So. 202.
 

 Plaintiff contends that Act No. 205 of 1938 “elevated an oil, gas and mineral lease from the classification of a personal right to that of a real right” and thereby vested “in the lessee
 
 all of the rights of any' other co-owner
 
 of either the general or any of the incidental rights to an immovable' and
 
 such co-owner is as much a necessary party to a valid partition proceeding as any other co-owner thereof or
 
 therein."
 

 On the other hand it is defendants’ contention that the legislature, in adopting Act No. 205 of 1938, did not intend to nor did it in fact overrule the settled jurisprudence of this state “that acts entered into by one of the coproprietors on an undivided object are subordinate to the result of a partition,” and that, when the property leased by one coproprietor without the consent of the others “ * * * is sold to effect the partition, the title will pass free of the lease.” Spence v. Lucas, 138 La. 763, 70 So. 796, 799. See, also, Crownover v. Randle, 21 La.Ann. 469; Cotten v. Christen, 110 La. 444, 34 So. 597; Gulf Refining Co. v. Hayne, 138 La. 555, 70 So. 509, L.R.A. 1916D, 1147, Ann.Cas.l917D, 130; Gulf Refining Co. v. Carroll, 145 La. 299, 82 So. 277; Allies Oil Co. v. Ayers, 152 La. 19, 92 So. 720; Whatley v. McMillan, 152 La. 978, 94 So. 905; United Gas Public Service Co. v. Arkansas-Louisiana Pipe Line Co., 176 La. 1024, 147 So. 66; Bickham v. Pitts, 185 La. 930, 171 So. 80; Superior Oil Producing Co. v. Leckelt, 189 La. 972, 181 So. 462; Caraway v. Hebert, La.App., 182 So. 164; McLean v. Pargoud, Man.Unrep. Cas. 264; and Articles 739, 740, 741, and 743 of the Revised Civil Code'.
 

 In our recent decision in the case of Allison v. Maroun, 193 La. 286, 190 So. 408, 409, we said:
 

 “The plaintiff invokes the cardinal rule of statutory construction, as expressed in article 18 of the Civil Code, that the universal and most effectual way of discovering the true meaning of a law, if its expressions are doubtful, is to consider the cause which induced the Legislature to enact it.
 
 It is a matter of general knowledge,
 
 and is conceded by all parties to this suit,
 
 that the cause which induced the Legislature to enact Act No. 205 of 1938 was the decision in Gulf Refining Co. v. Glassell, 186 La. 190, 171 So. 846, that the holder of a mineral lease had not a real right on the leased land and therefore could not institute successfully a petitory or possessory action. *
 
 * * ” (Italics ours.)
 

 And as stated in the Louisiana Law Review, “Act 205 of 1938 was passed for the purpose of changing the rule of the Glassell
 
 *370
 
 case. * * * By defining a mineral lease as a ‘real right/ the 1938 Act brings the right of the lessee (such as that in the Glassell case), within the operation of the articles of the Code of Practice permitting petitory actions. The act will place at rest the consternation caused in the oil industry after the Glassell decision which, although entirely correct from a legal standpoint, was regarded as undesirable.” 1 Louisiana Law Review 80. See, also, 13 Tulane Law Review, 416; Mineral Rights in Louisiana, by Mrs. Harriet Spiller Daggett, page 16; and Colgin v. Harris, D. C., 27 F.Supp. 798, 799.
 

 In the case of Colgin v. Harris, supra, the author of the opinion said:
 

 “It was peculiarly within the province of the writer of this opinion, for he was Attorney General of Louisiana during the 1938 session of the Louisiana Legislature, to know that Act No. 205 of 1938 has as its legislative purpose to give relief from the ruling in the then very recent case of Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846.”
 

 Section 1 of the act (No. 205 of 1938) provides “That oil, gas and other mineral leases, and contracts applying to and affecting such leases or the right to reduce oil, gas or other minerals to possession, together with the rights, privileges and obligations resulting or flowing therefrom, are hereby defined and classified as real rights and incorporeal immovable property, and may be asserted, protected and defended in the same manner as may be the ownership or possession of other immovable property by the holder of such rights, without the concurrence, joinder or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land.” By Section 2 the act is made retroactive and all of the laws conflicting therewith are repealed by Section 3.
 

 Thus it may be seen that after the decision in the Glassell case, declaring that under the law as it then existed the mineral lessee did not have a greater right than the ordinary lessee, both being controlled by the same basic law, and, consequently, without the right to institute the petitory or possessory action, the legislature, at its regular session of 1938, adopted Act 205, classifying a .mineral lease and similar contracts as real rights and incorporeal immovable property in order to give to the mineral lessee
 
 “any procedure available to the owner of immovable property or land” so that his rights “may be asserted, protected and defended in the same manner as may be the ozvnership or possession of other immovable property by the holder of such rights
 
 * * (Italics ours.)
 

 Of course the legislature did not intend by its adoption of the act to grant to the mineral lessee the same right of ownership in and to the property leased as that of .his lessor, so that he would be permitted to institute a partition proceeding against his lessor or against the owner of the property under lease to him, or vice versa, for “The law which confers the right to the partition of a ‘thing held in common’ has no application to
 
 *372
 
 those who hold, respectively, the fragments of a dismembered title to the same immovable property, for the reason that in such case, the title being dismembered, each part is a distinct thing, held by a different owner, and there is no ‘thing held in common.’ * * * ” Smith v. Nelson, 121 La. 170, 46 So. 200, 201.
 

 “Ownership is the right by which a thing belongs to some one in particular, to the exclusion of all other persons.” Article 488, Revised Civil Code. “It is of the essence of the right of ownership that it can not exist in two persons for * * * the same thing; but they may be the owners of the same thing in common, and each for the part which he may have therein.” Article 494. However, as we said in the case of Vincent v. Bullock, 192 La. 1, 187 So. 35, 40, “ ‘Perfect ownership gives the right to use * * * and to dispose of one’s property in the most unlimited manner * * * ’ (Revised Civil Code, Article 491), and nothing will be found in either the letter or the spirit of our law to prevent an owner from dismembering his property and from disposing of each separate dismemberment as he pleases.” 192 La. 1, 187 So. 35. But, as was stated in the holding of the case of Gulf Refining Co. v. Carroll, 145 La. 299, 82 So. 277, 278, “ * * *
 
 the owner of cm undivided
 
 * * *
 
 [interest in\ a tract of land has not the right to exploit the land for oil and gas without the consent, implied or express, of his co-owner, and not having this right himself he cannot confer it upon a lessee.
 
 * * * A co-owner may therefore oppose any attempt by his co-owners, or by a lessee of his co-owner, to' exploit the common property for oil and gas.” (Brackets and italics ours.) See, also, Cotten v. Christen, 110 La. 444, 34 So. 597.
 

 The reason for the rule is stated in the opinion to be that “Co-owners are owners par mi et par tout, of part and of the whole. Neither of the two co-owners has the exclusive right to any determinate part of the common property. So true is this, that when, in the case of Martel v. Jennings-PIeywood Oil Syndicate, 114 La. 903, 38 So. 612, this court was applied to by a co-owner to be placed in possession of his interest in the common property, the request had to be refused, because such a thing was legally impossible. * * * ”
 

 The court, in the same case, declared the question tó be “as old as the Roman Law,” and, continuing, cited with approval the following:
 

 “ ‘When there is indivisión between several persons, each one of them possesses on the thing, in so far as concerns his or her share, all the rights compatible with the purely intellectual nature of this quota, and may exercise them unaided; on the other hand,
 
 no single one of these persons can confer rights on the entirety of the common property,
 
 or even on any specific part,
 
 withotct the consent of all the others.1
 
 Aubry et Rau, vol. 2, par. 221, pp. 404, 405.
 

 “ ‘Inasmuch as the right of each one of the joint owners consists in an ideal quota and not in any specific entity,
 
 no one of them may without the consent of the others exercise on the totality of the com
 
 
 *374
 

 mon
 
 property, nor on any physically determinate part of it,
 
 any material or juridical acts involving the exercise of the actual and immediate right of ownership.’
 
 Carpentier and Du Saint, Rep. Droit Francais, vo. Indivisión, p. 152, No. 111. * * *
 

 “‘It may be laid down as a principle that the co-owner of property held in indivisión cannot lease it without the consent of his co-owners.
 
 The latter would have the right to cause to be annulled in its entirety a lease which had been entered into without their concurrence, for, as long as the indivisión continues, each one of the joint owners has a right to the whole.’ ” citing Fuzier-Herman, Repertoire du Droit Francais, vo. Bail, No. 192- and others. (Italics ours.)
 

 In the recent case of Bickham v. Pitts, 185 La. 930, 171 So. 80, 82, we said that “Lessees and royalty owners are not co-owners of the land,” and held, as stated in the syllabus, that they (lessees and royalty owners) are “not ‘proper and necessary parties’ to [a] suit to partition land by licitation, in absence of allegation or proof that any of them had actually developed or made any move to develope land for minerals.” (Brackets ours.)
 

 But plaintiff complains that if the judgment in the partition proceedings is permitted to stand, they will be deprived of a very valuable property right without their having been made party to the proceedings. Moreover, under the express provisions of the Revised Civil Code, “* * * tfre obligations of a lessor are not only to deliver possession, but to protect his lessee in possession and the • enjoyment of any profit that may inure resulting from said lease is just as great as of a vendor.” The answer to that contention is that it (plaintiff) took a lease from some of the co-owners in indivisión without the consent of the others, knowing (as stated in the case of Spence v. Lucas, supra) “that the property might be judicially partitioned by licitation, and that the lease would fail if the property was sold to a third person. In that event the contingency will have happened; the lease will become impossible of execution; and it will cease to exist as to. the land.”
 

 We therefore conclude that plaintiff was not a necessary party to the proceedings to. partition the property in controversy.
 

 This conclusion having been reached, plaintiff is without right or interest to complain about any irregularities in the proceedings. Furthermore, plaintiff has not only failed to urge them, either orally or in brief, but concludes its brief with the statement that the only question before us for consideration is the main issue hereinabove disposed of. Moreover, the allegations of plaintiff’s petition in this respect are not borne out by the record.
 

 Plaintiff does raise in its brief, however, the proposition that since many of the heirs had sold real rights, while others had disposed of their entire interest in the land, the court of probate was without jurisdiction in the matter.
 

 The question of jurisdiction was neither pleaded, presented to, nor passed
 
 *376
 
 upon by the lower court. It is raised for the first time in appellant’s brief and, therefore, presents nothing for us to review. Article 895, Code of Practice; Griffin v. Waters, 1 Rob. 149; Bludworth v. Hunter, 9 Rob. 256; Matter of New Orleans Improvement & Banking Company, 4 La.Ann. 471; Gilly v. Roumieu, 11 La.Ann. 746; Dejol v. Johnson, 12 La.Ann. 853; Montgomery v. Barrow, 19 La.Ann. 169; Chase v. Davis, 20 La.Ann. 201; Yorke & Co. v. Scott & Co., 23 La.Ann. 54; Gantt v. Eaton & Barstow, 25 La.Ann. 507; Walker v. Sauvinet, 27 La.Ann. 314, Id., 92 U.S. 90, 23 L.Ed. 678; Succession of Rhodes, 39 La.Ann. 473, 2 So. 36; State ex rel. Neyland v. Read, 50 La.Ann. 445, 23 So. 715; De Grilleau v. Boehm, 106 La. 472, 31 So. 74; Neith Lodge v. Vordenbaumen, 111 La. 213, 35 So. 524; Bonnin v. Town of Crowley, 112 La. 1025, 36 So. 842; Timberlake v. Sorrell, 125 La. 554, 51 So. 586; Succession of Turgeau, 130 La. 650, 58 So. 497; Cunningham v. Penn Bridge Co., 131 La. 196, 59 So. 119; Quaker Realty Co. v. Maierwatt Realty Co., 134 La. 1030, 64 So. 897; Godchaux Sugars v. Boudreaux & Bros., 153 La. 685, 96 So. 532; Safford v. Albritton, 161 La. 773, 109 So. 486; Clarke Co. v. Petivan, 161 La. 1095, 109 So. 913; Woodward, Wight & Co. v. National Box Co., 168 La. 701, 123 So. 296; New Orleans Land Co. v. Board of Levee Com’rs of New Orleans Levee District, 171 La. 718, 132 So. 121; Succession of Price, 172 La. 606, 134 So. 907; State v. Brown, 175 La. 357, 143 So. 288; Succession of Quinn, 183 La. 727, 164 So. 781; Gaines v. Crichton, 187 La. 345, 174 So. 666; State v. Great Atlantic
 
 &
 
 Pacific Tea Co., 190 La. 925, 183 So. 219; Fite v. Miller, 192 La. 229, 187 So. 650, 122 A.L.R. 446, and Roane v. Bourg, La. App., 177 So. 373. Besides, this is a combination succession and partition proceeding and it was properly brought, as required by the Revised Civil Code, Article 1290, “* * * before the judge of the place where the property * * * divided is situated * * (Avoyelles Parish.)
 

 For the reasons assigned, the judgment of the lower court is annulled and set aside and it is now ordered, adjudged, and decreed that plaintiff’s suit is dismissed at its cost.
 

 O’NIELL, C. J., does not take part.
 

 [1]
 

 195 La. 376.